[Civ. No. 13563.   Second Dist., Div. One.   July 9, 1942.]

LOIS E. WUEST, Appellant, v. WILLIAM O. WUEST, Respondent.

Newby & Newby for Appellant.

Cook & Obeji for Respondent.

WHITE, J.—Plaintiff herein filed an action for separate maintenance. Subsequently, by an amendment to her complaint, she sought a divorce upon the ground of extreme cruelty, asked for a reasonable amount of the community property, custody of the minor children and allowance for their support and maintenance, together with alimony for herself, court costs, and attorney's fees. Defendant answered and cross-complained for divorce on the ground of extreme cruelty, sought custody of the minor children, and an equitable division of the community property. After a trial, plaintiff was granted a divorce on the ground of extreme cruelty. Custody of the children was awarded jointly to the parties, with actual custody in the defendant husband, with right of visitation to the plaintiff wife. An award also was made in favor of the wife for alimony and attorney's fees.

In connection with the community property of the parties, the court determined that the same was of the value of $34,-165.25, and ordered that one-half of this amount, or $17,-082.62, be paid by defendant husband to the plaintiff over a period of not to exceed 23.73 years at the rate of $50 per month. The judgment further enjoined defendant husband from disposing of any of the community property until plaintiff had been paid in full for her share thereof and impressed

upon such real property a lien in favor of plaintiff until she had received the value of her one-half interest therein. An interlocutory judgment of divorce in accordance with the foregoing was thereupon entered on May 31, 1940.

It appears from the record that the determination of the value of the community property, as well as the method by which plaintiff was to be paid her share, resulted from a stipulation entered into during the trial between the parties litigant and their respective counsel which was filed with and approved by the court, the terms of which stipulation, so far as the community interests of the parties were involved, being incorporated in the interlocutory judgment of divorce.

On May 27, 1941, and prior to the entry of a final judgment of divorce, plaintiff in the last-mentioned proceeding commenced an action in the Superior Court of Los Angeles County to vacate and modify in part the judgment entered in the divorce case. By her complaint filed in the last-named action plaintiff alleged that prior to and during the trial of the divorce action she was in an enfeebled condition mentally and physically, due to the cruel and inhuman treatment inflicted upon her by her husband, coupled with the strain under which she labored by reason of being subjected to investigations by court assistants and psychiatrists appointed by the court after the commencement of the divorce action and prior to the entry of the interlocutory judgment therein. Plaintiff then alleged in her complaint that she was informed by her attorney, who is not her present counsel, that the judge presiding in the divorce trial (who was not the judge presiding in the instant proceeding) had informed said attorney that the judge "might not grant the plaintiff a divorce if she refused to sign the stipulation attached to 'Exhibit A' and that she insisted upon the stipulation being signed by both parties to said action and their respective attorneys, so that neither party could appeal; and said judge also made the statement in open court before said stipulation was signed, that it must be signed by both parties and their attorneys so that no appeal could be taken from any judgment entered in said action; that because of these representations to plaintiff and her weakened mind, due to the said assaults of her husband and the passing through the change of life, she reluctantly signed said stipulation.''

The complaint further charged: ''That plaintiff was not informed before signing said stipulation that she would be deprived of making any application to the court which ren-

dered said judgment, for a modification thereof with reference to the property rights of plaintiff, and if she had been so informed she would not have signed said stipulation; nor was plaintiff ever informed that she might have applied to the court for relief under section 473 of the Code of Civil Procedure of the State of California until long after the expiration of six months after the entry of said judgment, Exhibit A.''

It was further alleged in plaintiff's complaint, upon information and belief, that the judge presiding at the divorce trial ''conferred in her chambers with the attorneys for plaintiff and defendant during the trial of said action No. D-183,252, and in the absence of the parties; and in said conferences that said judge informed said attorneys that she would not divide the community property in kind, because she felt that because of the unstable mental condition of plaintiff she might not be able to hold said property or the proceeds derived from a sale thereof, if awarded to her, and hence that whatever amount that would be awarded to plaintiff should be based upon her life-expectancy and paid to plaintiff in monthly installments, so that no part of the principal could be expended by plaintiff during her lifetime, except said monthly installments of $50.00 each; that plaintiff was not informed of these conferences prior to the entry of said judgment, nor until the verification of this complaint; that if plaintiff had been informed of the effect of said judgment of depriving her of her property rights in the community property of the plaintiff and the defendant, she would not have signed said stipulation attached hereto as a part of said 'Exhibit A.'

''Plaintiff alleges that she never authorized her attorney to waive written findings of fact in said action No. D-183,252 and she had no information about the legal effect of said waiver until a very recent date.''

Defendant interposed a demurrer to plaintiff's complaint upon the ground that the same did not state facts sufficient to constitute a cause of action; that there was a misjoinder of parties, in that the County Clerk of Los Angeles County was made a party defendant; that several causes of action were alleged but not separately stated in the complaint, and finally, that the pleading was ambiguous, unintelligible and uncertain. After hearing on the demurrer, the trial court made its order sustaining the same without leave to amend, and from

the judgment of dismissal predicated thereon plaintiff prosecutes this appeal.

Whether the demurrer should have been sustained is the only question to be decided. We are persuaded that the demurrer should have been overruled. ■ Concerning defendant's claim of misjoinder of parties by naming the county clerk as a defendant, it may well be said that this ground of demurrer, while available to the county clerk, did not furnish defendant Wuest with a legal or valid objection to the complaint. It was not open to defendant Wuest to demur for misjoinder of parties where the action properly lay against him and his interests were not affected by the joinder of the county clerk. (*Madary* v. *City of Fresno,* 20 Cal. App. 91, 98 [128 Pac. 340] ; *Gardner* v. *Samuels,* 116 Cal. 84, 90 [47 Pac. 935, 58 Am. St. Rep. 135].) Furthermore, it is asserted in appellant's brief, and not denied by respondent, that the defendant county clerk, through the medium of a stipulation filed in the action, made no objection to his being named a party defendant. ■ Respondent's claim that the complaint includes several causes of action without separately stating them is equally without merit. The pleading states but a single cause of action, *viz.,* that the interlocutory judgment of divorce entered by the superior court was beyond its jurisdiction. Other allegations as to the manner in which the claimed absence of jurisdiction was brought about may be regarded as mere matters of inducement to the main cause of action. ■ Nor does the fact that certain allegations of the complaint are based upon information and belief militate against the sufficiency of the pleading. Because pleadings are meant to be self-serving, it has been held that basing them on hearsay is expressly authorized. (*Davis* v. *City of San Diego,* 33 Cal. App. (2d) 190, 193 [91 P. (2d) 640].) Nor was the complaint ambiguous, unintelligible or uncertain. It fully met the requirements of section 426 of the Code of Civil Procedure.

■ We come now to a consideration of respondent's claim that the complaint did not state facts sufficient to constitute a cause of action. In effect, the complaint charged that during the trial the judge informed plaintiff's counsel that unless she signed a stipulation to dispose of the community property in a certain manner the court "might not" grant her a decree, and also alleged that the court further insisted that findings be waived, to the end that no appeal might be prosecuted from the interlocutory judgment. This the trial judge cer-

tainly had no right to do. ▮ The right of appeal is as sacred and inviolable as the right to a trial, and when by judicial oppression such right is violated or vitiated, the guaranteed and substantial rights of a party have been materially affected thereby. ▮ The trial judge certainly had no right to advise plaintiff through her counsel, in effect, as appears from the allegations of the complaint, that although plaintiff had established and proved a case entitling her to an interlocutory judgment of divorce on the ground of cruelty, nevertheless such a judgment would not be granted unless the plaintiff stipulated to accept her share of the community property on an amortized plan extending over a period in excess of 23 years, and further that plaintiff waive findings so that an appeal might not be taken from the judgment. ▮ The fact that plaintiff's attorney on her behalf agreed to the stipulation does not aid respondent in justifying the means by which such stipulation was brought into being. It is a cardinal rule that an attorney cannot by virtue of his general authority bind his client by any act which amounts to a surrender in whole or in part of any substantial right. (3 Cal. Jur. 667.) ▮ If the trial judge was convinced by the evidence that plaintiff was entitled to a judgment, the same should have been granted her, and she should have been left free to appeal from that portion of the judgment which divided the community property of the parties, if she so desired. In making the waiver of appeal by plaintiff from any portion of the judgment the price of obtaining a judgment to which she was entitled, the trial judge materially prejudiced a substantial right belonging to plaintiff. The trial of a case should not only be fair in fact, but it should also appear to be fair, and where the contrary appears it shocks the judicial instinct and conscience to allow the judgment to stand. To countenance the destruction of a litigant's fundamental right by a process such as that which appears from the complaint with which we are here concerned would be to validate and recognize a rule that would be most disastrous in its results, so far as order and system in the administration of justice are concerned.

The means by which appellant was compelled to abdicate the rightful exercise of her historic right to appeal constituted an excess of power by the court, and the jurisdiction of the court was thereby overreached. As a consequence thereof, a judgment was rendered (if the allegations of the

complaint be true, and we must as the trial court should, in passing upon a demurrer to a pleading, assume the verity thereof) with reference to the division of the community property that was of no force or effect, because the means adopted to compel plaintiff's acquiescence in that portion of the judgment affecting the disposition of the community property transgressed the fundamental right guaranteed every litigant in a court of justice to appeal from a judgment affecting his liberty or his property. As was said in *McClatchy* v. *Superior Court,* 119 Cal. 413, 418 [51 Pac. 696, 39 L. R. A. 691], "Any departure from those recognized and established requirements of law, however close the apparent adherence to mere form in method of procedure, which has the effect to deprive one of a constitutional right, is as much an excess of jurisdiction as where there exists an inceptive lack of power. 'The substance and not the shadow determines the validity of the exercise of the power.' (*Postal Telegraph etc. Co.* v. *Adams,* 155 U. S. [688], 689, 698 [15 S. Ct. 268, 360, 39 L. Ed. 311].)"

■ That the broad and flexible powers of a court of equity may be invoked to right the wrong allegedly done appellant here is well established. (§3523, Civ. Code.) Living as we do in a world of change, equitable remedies have necessarily and steadily been expanded to meet increasing complexities of such changing times, and no inflexible rule has been permitted to circumscribe the power of equity to do justice. As has been well said, equity has contrived its remedies "so that they shall correspond both to the primary right of the injured party, and to the wrong by which that right has been violated," and "has always preserved the elements of flexibility and expansiveness, so that new ones may be invented, or old ones modified, in order to meet the requirements of every case, and to satisfy the needs of a progressive social condition, in which new primary rights and duties are constantly arising, and new kinds of wrongs are constantly committed." (1 Pom. Eq. Jur., 4th ed., p. 125, § 111.) As was said in *Bechtel* v. *Wier,* 152 Cal. 443 [93 Pac. 75, 15 L. R. A. (N. S.) 549], "the powers of a court of equity, dealing with the subject-matters within its jurisdiction, are not cribbed or confined by the rigid rules of law. From the very nature of equity, a wide play is left to the conscience of the chancellor in formulating his decrees, that justice may be effectually carried out. It is of the very essence of equity that its powers should be so broad as to be capable of dealing with novel

conditions." (See, also, 10 Cal. Jur., p. 463, § 6, p. 559, § 96.) The allegations of the complaint herein present a situation for the application of the well known powers of a court of equity to find a remedy for every wrong.

For the foregoing reasons, the judgment is reversed and the cause remanded, with directions to the court below to overrule defendant Wuest's demurrer and to afford him a reasonable time within which to answer plaintiff's complaint should he be so advised.

York, P. J., and Doran, J., concurred.