[No. B009338. Second Dist., Div. Three. Dec. 17, 1985.]

JOHN A. McCONNELL et al., Plaintiffs and Respondents, v.
MERRILL LYNCH, PIERCE, FENNER & SMITH, INC.,
Defendant and Appellant.

[No. B010023. Second Dist., Div. Three. Dec. 17, 1985.]

MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
JOHN A. McCONNELL et al., Real Parties in Interest.

## COUNSEL

Rogers & Wells, Gerald E. Boltz, Charles R. Hartman, Charles E. Wheeler, MacDonald, Halsted & Laybourne, Orville A. Armstrong, and Joel Mark for Defendant and Appellant and Petitioner.

Jack D. Scott, Marcus E. Crahan, Jr., and Roger J. Aull for Plaintiffs and Respondents and Real Parties in Interest.

No appearance for Respondent Court.

## OPINION

**GRIGNON, J.**\*—Appellant and defendant Merrill Lynch, Pierce, Fenner & Smith Inc. (Merrill Lynch) appeals from an order made after judgment (Order) in favor of plaintiffs and respondents John A. McConnell, Marguerite McConnell and Caroline W. Barrie, individually and on behalf of all others similarly situated (the Class). Merrill Lynch alternatively petitions this court for a writ of mandate modifying the Order from which it appealed.

---

\*Assigned by the Chairperson of the Judicial Council.

The petition for writ of mandate was deferred to be considered with the appeal.[1] The Class has requested that sanctions be imposed on Merrill Lynch for prosecuting a frivolous appeal.

For the reasons set forth below, we affirm the Order, deny the petition for a writ of mandate, and impose sanctions for a frivolous appeal.

STATEMENT OF FACTS

This case is a class action originally filed in 1973 alleging that Merrill Lynch violated the California Usury Law by charging interest on its margin accounts in excess of the 10 percent limit then permitted. This cause of action was subsequently dismissed. The complaint was amended in 1975 to allege that Merrill Lynch charged compound interest on its margin accounts in violation of section 2 of the California Usury Law (Deering's Ann. Uncod. Measures 1919-1 (1973 ed.) p. 40; 10 West's Ann. Civ. Code (1985 ed.) foll. § 1916.12 at p. 173.). Section 2 prohibits the charging of compound interest (i.e., interest on interest) "unless an agreement to that effect is clearly expressed in writing and signed by the party to be charged therewith."

The trial court sustained Merrill Lynch's demurrer to the compound interest cause of action on the ground that Merrill Lynch's customer agreement on its face complied with section 2. The California Supreme Court reversed the decision of the trial court in *McConnell* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1978) 21 Cal.3d 365 [146 Cal.Rptr. 371, 578 P.2d 1375, 18 A.L.R.4th 1050] holding that the customer agreement was not sufficient on its face to comply with section 2 of the Usury Law. On remand the trial court decertified the class based on its view that it would be necessary to receive the testimony of each class member as to his or her understanding of the customer agreement. Subsequently, the California Supreme Court in *McConnell* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1983) 33 Cal.3d 816 [191 Cal.Rptr. 458, 662 P.2d 916] ruled that parol evidence was not admissible to explain the meaning of the customer agreement concerning the issue of compound interest and the written disclosure provided by Merrill Lynch to its customers regarding the charging of compound interest on margin accounts did not satisfy section 2 because the written disclosure was not signed by the customers.

Beginning in late 1983, the parties began settlement negotiations resulting in a settlement agreement in January of 1984. This settlement agreement

---

[1]The Class made a motion to this court to dismiss the appeal. This motion was denied and the issues raised therein were deferred to be considered with the substance of the appeal.

provided that Merrill Lynch would pay up to $7 million for payments to class claimants, attorneys fees, and administrative costs. The agreement further provided that if claimants submitted valid claims totaling more than $4.8 million, payments would be reduced pro rata; any part of the $7 million not paid to claimants, for attorneys fees, or for administrative costs would be returned to Merrill Lynch.

The settlement agreement was submitted to the trial court for its approval. The trial court indicated that it would approve the agreement with the following changes:

1. The settlement fund would be increased to $10 million;

2. The trial court would have the authority to increase payments to class claimants in the event the total claims (including attorneys fees and administrative costs) were less than the $10 million settlement fund; and

3. Merrill Lynch would forfeit the entire $10 million even if all the deposited funds were not required to effectuate its terms.

Merrill Lynch agreed to increase the fund to $10 million, but it initially refused to forfeit unused funds. Subsequently, Merrill Lynch agreed to give the trial court absolute discretion to increase or decrease payments to class claimants and to determine what amount, if any, of the settlement fund would be returned to Merrill Lynch. The parties agreed to waive the right to appeal the exercise of that discretion. A revised settlement agreement was entered into by the parties on February 29, 1984. That agreement provided in pertinent part:

"8. If the valid claims filed by class members are such that payments in accordance with the schedule set forth in paragraph 4, in addition to the payment of the attorneys' fees and litigation costs of plaintiffs' counsel as fixed by the Court and the costs of administration of this settlement as provided in paragraph 12, would exceed the amount of money in the escrow account, the amounts to be paid to class claimants will be decreased as the Court, in its absolute discretion, directs so that the total amount to be paid by Merrill Lynch will not exceed the amount in the escrow account. If the valid claims filed by class members are such that the payments in accordance with the schedule set forth in paragraph 4, in addition to the payment of the attorneys' fees and litigation costs of plaintiffs' counsel as fixed by the Court and the costs of administration of this settlement as provided in paragraph 12, would be less than the amount in the escrow account, the amounts to be paid to class claimants may be increased as the Court, in its absolute

discretion, directs. After such time as the amounts due to class members in accordance with the schedule set forth in paragraph 4, together with the amounts necessary for payment of the attorneys' fees and litigation costs of plaintiffs' counsel as fixed by the Court and the costs of administration of this settlement as provided in paragraph 12, are paid or reserved for payment, Merrill Lynch shall have the right to petition the Court for the return of the excess funds, if any, in the escrow account to Merrill Lynch, and the decision of the Court after a full hearing at which the Court has had full opportunity to exercise its discretion to increase the amounts to be paid the class claimants, as aforesaid, shall not be appealable by any of the parties to this Settlement Agreement.''

On April 17, 1984, the revised settlement agreement was approved by the trial court and judgment was entered on April 19. The trial court expressly reserved jurisdiction to effectuate the terms of the judgment.

On December 13, 1984, the trial court, after a hearing, entered an Order increasing the payments to class claimants by approximately 200 percent. Merrill Lynch appeals from this Order.

CONTENTIONS

Merrill Lynch contends that:

1. The December 13, 1984, Order is an appealable order pursuant to Code of Civil Procedure section 904.1, subdivision (b).

2. The trial court did not have jurisdiction to require Merrill Lynch to waive its right to appeal as a condition of approving a settlement agreement.

3. The trial court erred by inappropriately inserting itself on behalf of the class into the negotiations for a settlement agreement.

4. The trial court abused its discretion by increasing the amount to be paid to claimants.

DISCUSSION

I

*The December 13, 1984, Order Is an Appealable Order
Pursuant to Code of Civil Procedure Section 904.1, Subdivision (b)*

Section 904.1 of the Code of Civil Procedure provides in pertinent part: "An appeal may be taken from a superior court in the following cases:

(a) From a judgment . . . . (b) From an order made after a judgment made appealable by subdivision (a)."

However, an order made after a judgment is not appealable under subdivision (b) if the appeal from the order presents the same questions as would have been presented on appeal from the judgment. (See, *Hilliker* v. *Board of Trustees* (1928) 91 Cal.App. 521 [267 P. 367].) The rationale for this rule is to preclude the possibility of two appeals from the same decision, or to preclude an unwarranted extension of time to appeal starting from the subsequent order if the aggrieved party failed to take a timely appeal from a judgment. (See *Lamb* v. *Holy Cross Hospital* (1978) 83 Cal.App.3d 1007 [148 Cal.Rptr. 273]; 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 91, p. 4098.)

Judgment was entered in this action on April 19, 1984. No appeal was taken from that judgment. The Order here appealed from was entered December 13, 1984, and a notice of appeal was filed on the same date. It is clear that the judgment of April 19 was a final appealable judgment under section 904.1, subdivision (a).[2] Thus, the December 13 Order is appealable pursuant to section 904.1, subdivision (b).

However, the appeal from the Order presents many of the same issues that could have been raised on an appeal from the judgment. Accordingly, those issues may not now be raised in this appeal. We conclude that the following issues are, therefore, not appealable:

1. Whether or not the trial court erred by inappropriately inserting itself on behalf of the class into the negotiations for a settlement agreement.

2. Whether or not the trial court had jurisdiction to require Merrill Lynch to waive its right to appeal as a condition of approving a settlement agreement.

The sole issue pending in this appeal is whether the trial court abused its discretion by increasing the amounts to be paid to claimants. We are of the opinion that the Order is appealable pursuant to Code of Civil Procedure section 904.1, subdivision (b) only to this extent.

---

[2]We do not address the separate question of whether an appeal may be taken from a consent judgment under the facts involved herein.

## II

*Merrill Lynch Expressly Waived Its Right to Appeal the Exercise of Discretion as Evidenced by the Order Appealed*

It is well-settled that a party may expressly waive its right to appeal subject to only a few conditions: 1. The attorney must have the authority to waive a party's right to appeal. 2. The waiver must be express and not implied. 3. The waiver must not have been improperly coerced by the trial judge. (See 6 Witkin, *op. cit. supra,* Appeal, § 133, p. 4121.)

Merrill Lynch does not contend that its attorneys did not have the authority to waive its right to appeal. Nor does it contend that the waiver was not express. Its sole contention in this regard is that the trial court improperly coerced Merrill Lynch into waiving its right to appeal, by requiring it to waive such right as a condition to approving a settlement agreement in a class action suit. To support this contention it relies primarily on *Wuest* v. *Wuest* (1942) 53 Cal.App.2d 339 [127 P.2d 934].

In *Wuest* v. *Wuest* the trial judge coerced plaintiff's counsel into a stipulation waiving findings and thus precluding an appeal by threatening to deny a divorce to his client if he failed to stipulate. In *Wuest* the attorney clearly was not authorized to waive his client's right to appeal nor was the waiver express, since the waiver flowed from the waiver of findings. In addition, the trial court *during a trial* improperly made the waiver of appeal the price to be paid for a judgment to which the plaintiff was entitled by the evidence.

This case is not even remotely similar to *Wuest.* Here, the trial court initially indicated that it would not approve the settlement agreement unless Merrill Lynch agreed to forfeit the entire $10 million settlement fund. This Merrill Lynch declined to do. Subsequently, it was suggested as a compromise that the trial court be given the *absolute* discretion to increase or decrease the amount of claims to be paid to class claimants and to determine the amount of the fund, if any, to be returned to Merrill Lynch. The parties would waive their right to appeal this exercise of discretion. Merrill Lynch agreed to this compromise.

The waiver of the right to appeal was, therefore, not improperly coerced by the trial court, but was part of complicated negotiations concerning a settlement agreement. If Merrill Lynch was not satisfied with the arrangement, the parties could have noticed a formal settlement hearing on their

initial settlement agreement (in the face of the court's probable disapproval of the terms) and appealed (or sought a writ) if the court in fact rejected the proposed terms. Merrill Lynch did not choose to pursue this alternative.

We conclude, therefore, that the waiver was a valid waiver of appeal rights and that Merrill Lynch has no right to appeal from the Order. Moreover, the issue of the existence of a valid waiver of the right to appeal is an issue which could have been raised on an appeal from the judgment and so is not cognizable in the present appeal.

SANCTIONS

We now address the question as to whether sanctions should be imposed under Code of Civil Procedure section 907 and rule 26(a) of the California Rules of Court.

In its brief on appeal and its brief in support of a motion to dismiss appeal, respondent Class requested that this court award sanctions for attorneys' fees and interest on the loss of use of the money on the grounds that the contentions on appeal were frivolous. Appellant Merrill Lynch argued against the imposition of sanctions in its brief in opposition to the motion to dismiss appeal.

On September 13, 1985, we issued an order to show cause why sanctions should not be assessed against Merrill Lynch and its counsel. The order to show cause stated in full as follows: "Good cause appearing therefor, Merrill Lynch, Pierce, Fenner & Smith, Inc. and its attorneys Rogers & Wells and McDonald, Halsted & Laybourne, are hereby ordered to appear before this court in its courtroom at 3580 Wilshire Boulevard, on September 19, 1985, at 10:30 a.m., to show why sanctions should not be assessed against you in the above appeal. (Code Civ. Proc., § 907, Cal. Rules of Court, rule 26, subd. (a). *In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 649.)"

The date set for the hearing on the order to show cause was the same date set for oral argument on the appeal and the petition for a writ of mandate. On that date both parties appeared by counsel and the issue of sanctions was argued extensively and vigorously by both sides.

"Free access to the courts is an invaluable aspect of our system of jurisprudence. A party possessing a colorable claim must not be chilled from asserting it by fear of unwarranted sanctions. [Citations omitted.] However,

where an appeal is frivolous . . . Code of Civil Procedure section 907 and California Rules of Court, rule 26(a), authorize the court to impose penalties and damages." (*Miller* v. *R.K.A. Management Corp.* (1979) 99 Cal.App.3d 460 [160 Cal.Rptr. 164].)

■ An appeal is frivolous when it has no merit, when any reasonable attorney would agree that the appeal is totally without merit. (See *Menasco* v. *Snyder* (1984) 157 Cal.App.3d 729, 734-735 [203 Cal.Rptr. 748].) ■ The uncontradicted facts in this case demonstrate the lack of any merit in this appeal. As part of a settlement agreement, Merrill Lynch expressly and unconditionally waived its right to appeal any decision of the trial court regarding increases of payments to class claimants and amounts to be returned, if any, to Merrill Lynch from the settlement fund.[3]

---

[3]"THE COURT: This is McConnell vs. Merrill Lynch.

"MR. CRAHAN: Your honor, Marcus Crahan and Roger Aull for the Plaintiffs.

"MR. BOLTZ: Your Honor, Gerald Boltz, Orville Armstrong, Joel Mark and Charles Wheeler for the defendant.

"THE COURT: The court had on its calendar this morning the hearing concerning the proposed revised settlement, coming on for motion based on the parties requesting the court to approve the revised settlement agreement.

"The court has conferred with counsel in chambers, and I understand instead of going forward on that hearing, that there has been a revision in the position of the defendant in the case; and on that basis, that counsel wish the court to outline its thoughts concerning the other terms of the settlement agreement.

"So Mr. Boltz, why don't you put on the record what the defendant's position is, as distinguished from the position expressed in the revised settlement agreement which was submitted on January 24, 1984.

"MR. BOLTZ: Thank you, your honor.

"I have been authorized by our client, Merrill Lynch, this morning to advise the court that Merrill Lynch is agreeable to a provision to amend the January 24 settlement agreement to provide that after Merrill Lynch deposits the sum of $10 million—and further, that after all claims and costs are paid—that if any money is remaining after the court has determined what is the appropriate distribution to the class, the court may in its discretion, after a full hearing on the matter, determine whether it is appropriate, upon an application of Merrill Lynch, for any or all such funds to be refunded to Merrill Lynch.

"I think that that is the major change in the defendant's position; and I think there are some other points which I am not certain I have all the details on, which the court has.

"THE COURT: We'll go down those in a moment. But let's talk for a moment about the handling of the $10 million.

"MR. BOLTZ: Yes.

"THE COURT: As I understand it, one, the amount to be distributed to the class members out of the $10 million is to be left entirely to the discretion of the court; correct?

"MR. BOLTZ: Correct. I assume, though, that means we would follow the plan.

"THE COURT: We will follow the plan; but if the court in its discretion decides to distribute more than the amounts set forth to the class members of the various classes, the court shall have that discretion.

"MR. BOLTZ: The court has that discretion.

"THE COURT: Totally and completely.

"MR. BOLTZ: That's correct.

"THE COURT: Also, the second point is that the court will have complete and total dis-

Judgment was entered on April 19, 1984, and no appeal was taken therefrom. After taking advantage of all the benefits of the settlement agreement, Merrill Lynch now asks this court to find that it was coerced into one portion of the settlement agreement, a portion which it only found objectionable after it was applied to Merrill Lynch's detriment.

This case has been litigated for twelve years, has been the subject of two California Supreme Court opinions, as well as one opinion and three unreported writ proceedings in this court, and was settled only after substantial negotiations involving both the parties and the trial court. Merrill Lynch at this late date is using this appeal to attempt to renege on the express terms of a settlement agreement it freely entered into. We cannot sanction such an abuse. This appeal and its accompanying petition for a writ of mandate are frivolous in nature and deserving of appropriate sanctions. We must now determine the amount of such sanctions.

Respondent Class requests this court to assess sanctions in the form of compensatory damages—attorneys fees and interest on the loss of use of the money. ■ The purposes of imposing sanctions for a frivolous appeal are to discourage such appeals and to compensate the respondents for the loss which results from delay. (See *Huber* v. *Shedoudy* (1919) 180 Cal. 311, 316-317 [181 P. 63].) ■ In a case involving a $10 million settlement fund, a nominal sanction would do nothing to discourage such appeals

---

cretion as to the amount, if any, to be returned to Merrill Lynch.

"MR. BOLTZ: That's correct.

"THE COURT: Thirdly, that Merrill Lynch will waive its rights of appeal—

"MR. BOLTZ: Yes.

"THE COURT:—As to the amount the court either does or doesn't return to Merrill Lynch, or on the amounts distributed to the class members; correct?

"MR. BOLTZ: That's correct.

"THE COURT: So that by waiving your rights to appeal, Merrill Lynch will understand that the amount out of the $10 million to be distributed to the class is entirely with the court's discretion; and the amount to be returned to Merrill Lynch, if any, is totally and completely in the court's discretion.

"MR. BOLTZ: Yes, sir; that's my understanding.

"THE COURT: Is that what we are talking about?

"MR. BOLTZ: Yes, sir; that's what we are talking about.

"THE COURT: So it's possible that Merrill Lynch—in turning over the $10 million to the court's jurisdiction—it may not get nickel-one back, or it may get something back; and as I say, if there are funds left, as you have outlined, in the account—of the $10 million plus accrued interest, less other expenses—that if there are such moneys, that we'll have a full and fair hearing; and Merrill Lynch—we'll hear from all parties, all representatives, and Mr. Crahan at the time, and we'll hear from Merrill Lynch; and the amount, if any, to be returned to Merrill Lynch out of funds remaining will be entirely in the court's discretion.

"Is that what we are talking about sir?

"MR. BOLTZ: Yes, your honor; that is my understanding as to what we are saying.

"THE COURT: All right."

in the future. Moreover, as a consequence of the frivolous appeal, payments to Class claimants have been delayed approximately one year. Therefore, we assess Merrill Lynch and its counsel Rogers & Wells[4] as sanctions for prosecuting this frivolous appeal an amount equal to the actual interest earned by the settlement fund from the date the notice of appeal was filed to the date this opinion is filed.

## CONCLUSION

The Order is affirmed. ▆ ▆▆ ▆ The petition for writ of mandate is denied.[5] Respondent Class is awarded its costs and attorneys fees on appeal. In addition, sanctions are imposed upon Merrill Lynch as set forth above to be recovered as costs by the respondent Class.

Klein, P. J., and Arabian, J., concurred.

---

[4]During oral argument, Rogers & Wells requested that any sanctions imposed not be imposed against the law firm of McDonald, Halsted & Laybourne since that firm was not responsible for the prosecution of the appeal. We, therefore, do not impose sanctions on McDonald, Halsted & Laybourne.

[5]Since the Order appealed from is an appealable order, an extraordinary writ is not proper. Merrill Lynch somewhat disingenuously asserts that although it may have waived its right to appeal, it did not waive its right to petition for extraordinary relief. We disagree. Merrill Lynch cannot obtain by extraordinary writ the right to appeal which it validly waived.