Filed 12/18/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| PG&E "SAN BRUNO FIRE" CASES | A152330<br><br>(San Mateo County<br>Super. Ct. No. JCCP4648) |

      This appeal arises from the settlement of several shareholder derivative lawsuits filed against the management of Pacific Gas & Electric Corporation and Pacific Gas and Electric Company (collectively referred to as "PG&E") regarding the 2010 pipeline explosion in San Bruno. The lawsuits were consolidated as part of the PG&E San Bruno Fire Derivative Cases and resolved by a settlement agreement that provided for settling plaintiffs' counsel to be paid in the aggregate $25 million in attorney fees and $500,000 in costs.

      By his notice of appeal filed on August 30, 2017, settling plaintiff Gary Sender (Sender) seeks to challenge the court's allocation determination embodied in three orders issued on April 17, 21, and 24, 2017. The appeal is opposed by respondents Hind Bou-Salman (Bou-Salman) and Louis Marini (Marini), two other settling plaintiffs, who seek dismissal of the appeal on various grounds. We dismiss the appeal as the operative settlement agreement unequivocally deems the trial court's allocation determination to be final and not subject to appellate review.

**FACTS**

      We set forth only those facts necessary to give context to our ruling.

1

Following the 2010 San Bruno pipeline explosion, area residents filed numerous lawsuits seeking to recover damages for personal injuries and property damage. The residents' lawsuits were coordinated as JCCP No. 4648 and assigned to a trial court for all purposes. Subsequently, PG&E shareholders Sender, Bou-Salman, and Marini (hereinafter also collectively referred to as plaintiffs) filed derivative lawsuits against the management of PG&E, which lawsuits were coordinated with the residents' lawsuits as well as additional shareholders' derivative lawsuits.

In March 2017, plaintiffs, by named lead co-counsel Cotchett, Pitre & McCarthy, LLP and Hagens Berman Sobol Shapiro LLP,[1] filed a motion asking the trial court for preliminary approval of a settlement agreement that resolved their shareholder derivative lawsuits, as well as certain additional shareholders' derivative lawsuits. The stipulation of settlement included the following definitions:

> "1.9 'Final' means the time when a judgment that has not been reversed, vacated, or modified in any way is no longer subject to appellate review, either because of disposition on appeal and conclusion of the appellate process (including potential writ proceedings) or because of passage, without action, of time for seeking appellate or writ review. More specifically, it is that situation when (1) either no appeal or petition for review by writ has been filed and the time has passed for any notice of appeal or writ petition to be timely filed from the Judgment; or (2) if an appeal has been filed, the court of appeal has either affirmed the Judgment or dismissed that appeal and the time for any reconsideration or further appellate review has passed; or (3) a higher court has granted further appellate review and that court has either affirmed the underlying Judgment or affirmed the court of appeal's decision affirming the Judgment or dismissing the appeal or writ proceeding, and the time for any reconsideration or further appellate review has passed.

---

[1] In the third amended consolidated derivative complaint, the operative pleading, Sender was represented by listed counsel Hagens Berman Sobol Shapiro LLP, Rigrodsky & Long, P.A., and The Law Offices of Debra S. Goodman; Bou-Salman was represented by listed counsel Cotchett, Pitre & McCarthy, LLP and the Law Office of Michael D. Liberty; and Marini, individually and as Trustee of the Louis R. Marini and Leona A. Marini 2012 Trust, was represented by listed counsel Corey, Luzaich, DeGhetaldi, Nastari, & Riddle LLP.

"1.17 'Plaintiffs in the Additional Derivative Cases' means PG&E Corporation shareholders Andrew Bushkin, Iron Workers Mid-South Pension Fund, and Bruce Tellardin.

"1.18 'Related Persons' means . . . attorneys . . .

"1.21 'Releasing Persons' means . . . the Settling Plaintiffs . . . and each and all of their Related Persons.

"1.27 'Settling Parties' means, collectively, each of the Settling Plaintiffs (on behalf of themselves and derivatively on behalf of PG&E), the SLC, PG&E, and the Settling Defendants.

"1.28 'Settling Plaintiffs' means, collectively, Hind Bou-Salman, Gary Sender . . . Louis Marini.

"1.29 'Settling Plaintiffs' Counsel' means: (i) Cotchett, Pitre & McCarthy, LLP; and (ii) Hagens Berman Sobol Shapiro LLP."

The settlement agreement's substantive paragraphs provided, in pertinent part:

"2.1    Settlement Amount.  In consideration of the Settlement, and subject to the terms and conditions of this Stipulation, the Settling Defendants shall cause to be paid by their insurance carriers ninety million dollars ($90,000,000.00) in unrestricted funds (the 'Settlement Amount') to PG&E . . . .  Such payment shall be due regardless of the existence of any appeals or objections to any aspect of the Settlement, including without limitation any appeals or objections to the Settlement itself, the Court's approval of any Fee and Expense Award or the Court's approval of any allocation of any Fee and Expenses Award among counsel for Plaintiffs in the Action and the Additional Derivative Cases. [¶] . . . [¶]

"6.1 . . . Settling Plaintiffs intend to seek a Fee and Expense Award from the Court in an amount not to exceed twenty-five million dollars ($25,000,000.00) for fees and five hundred thousand dollars ($500,000.00) in costs.  PG&E Corporation agrees it will pay to Settling Plaintiffs' Counsel a Fee and Expense Award in an amount up to twenty-five million dollars ($25,000,000.00) for fees, and up to five hundred thousand dollars ($500,000.00) in costs, to be paid from the Settlement Amount, if and as ordered by and subject to the approval of the Court.

"6.2.   Approval by the Court of the Fee and Expense Award shall not be a precondition to approval of the Settlement or dismissal of the San Bruno Fire Derivative Cases or the Additional Derivative Cases in accordance with this Settlement.  The Settling Plaintiffs may not cancel or terminate this Settlement

3

based on the Court's or any appellate court's ruling with respect to attorneys' fees and/or expenses. Any appeal relating to an award of attorneys' fees or expenses will not affect the finality of the Settlement, the Judgment or the releases provided herein. The application for a Fee and Expense Award may be considered separately from the proposed Settlement. [¶] . . . [¶]

"6.7.  In the event that the Judgment fails to become Final, or, as the result of any proceeding or successful collateral attack, the Fee and Expense Award is reduced or reversed, if the Settlement itself is voided by any party as provided herein or by the terms of the Settlement, or if the Settlement is later reversed by any court of competent and valid jurisdiction, then it shall be Settling Plaintiffs' Counsel's several obligations to make appropriate refunds to PG&E Corporation or any Settling Defendants' insurance carriers that made payments of any portion of the Fee and Expense Award within fifteen (15) business days." [¶] . . . [¶]

"9.1  The Settling Parties have agreed to a process pursuant to which counsel to Plaintiffs in the Additional Derivative Cases may receive funds from this Fee and Expense Award; specifically, counsel to Plaintiffs in the Additional Derivat[iv]e Cases may either come to agreement with Settling Plaintiffs' Counsel on the amount of their distribution, or may make an application for an award of fees and costs to [Hon. Daniel R. Weinstein (Ret.), Hon. Zerne P. Haning III (Ret.) and Hon. Edward A. Panelli (Ret.)] ('the Panel'), at a time and in a format deemed appropriate by the Panel. The Panel will issue a decision on the allocation of the Fee and Expense Award that will be subject to Final approval by Court. The Court's determination on allocation shall be final and nonappealable. In either event, funds may not be disbursed from the Fee and Expense Award to counsel for Plaintiffs in the Additional Derivative Cases until the applicable matter(s) are dismissed with prejudice, and any time to appeal has run."

PG&E gave notice of the proposed settlement pursuant to the court order issued on April 26, 2017, which included the following information regarding how to object to the settlement and the consequences of a failure to file an objection:

"Any Current PG&E Shareholder who does not make his, her, or its objection in the manner provided in the preceding paragraph of this Preliminary Approval Order and as described in the Notice shall be bound by the Judgment entered and the releases to be given as part of the Settlement, and deemed to have waived such objection and shall forever be foreclosed from (i) making any objections to the fairness, adequacy, or reasonableness of the Settlement; and (ii) making any objections to the fairness and reasonableness of the Fee and Expense Award."

4

The April 26, 2017 order also provided notice that a settlement hearing was scheduled for July 18, 2017, at which time the court would consider final approval of the settlement and whether to approve plaintiffs' application for an award of attorney fees and costs.

On May 17, 2017, the trial court issued an order addressing its prospective allocation of attorney fees and costs, stating as follows:

> "The court issued and emailed all plaintiffs' counsel requesting all time and costs records within two weeks from the date of that email sent on May 8, 2017. This minute order modifies that order in that the court will find that all such documents submitted, including any briefing by counsel, will be lodged with the court and not filed. The court specifically rules that these documents are confidential and that the court has made the necessary determination set forth in California Rules of Court 2.550 and 2.551 that there is no public interest in said documents and that the documents submitted are solely for the court's determination as to allocation of fees and costs to be awarded. Additionally, the court will set a separate hearing for determination and allocation of attorney's fees and costs subsequent to the final approval hearing on the settlement now scheduled for July 18, 2017 at 9:00 a.m. in Department 7 of the Superior Court. Counsel will meet and confer with the court to select a new date for that hearing."

Thereafter, on June 27, plaintiffs filed a motion, to be heard at the scheduled July 18 hearing, asking the court to give final approval of the settlement and enter judgment accordingly. As part of the motion papers, plaintiffs' lead counsel informed the court of counsel's understanding of the May 17 court order:

> "Pursuant to the Court's Minute Order dated May 17, 2017 directing Plaintiffs' Counsel to lodge their time and expense reports and any briefing with the Court to assist in its determination of an award and allocation of fees and expenses, [counsel] understand the Court will determine the allocation of any award at a later time, and separate and apart from the motion on final approval set for hearing on July 18, 2017. [Counsel] also note that, pursuant to the Settlement, all Plaintiffs' Counsel agreed to and are currently participating in a binding arbitration regarding the allocation of fees and expenses, though no decision has been issued and any decision is subject to this Court's own review and approval."

At the July 18 hearing, the trial court stated that proper notice of the proposed settlement had been provided, none of the shareholders had opposed the proposed

5

settlement, and no other opposition had been filed. The trial court asked Justice Haning, a member of the panel chosen to make the attorney fees allocation recommendation, to comment, without invading the "privilege of mediation," on plaintiffs' request for the aggregate sum of $25 million in attorney fees. Justice Haning set forth the factors that had been considered, noting that the "mediators support[ed] and recommend[ed] the gross fee amount," the parties agreed to this amount, and the mediators had not yet decided on "allocation." The trial court then explained its reasons for approving the settlement, including the aggregate award of attorney fees. The court stated it would retain jurisdiction to resolve the fee allocation issue; "The special masters are going to work to hopefully reach a resolution, but the Court will reach that final decision."

The July 18 judgment provided, in pertinent part, as follows:

"This Judgment incorporates by reference the definitions in the Stipulation, and all terms used herein shall have the same meanings as set forth in the Stipulation, unless otherwise set forth herein. [¶] . .

"The Court hereby approves the Settlement as set forth in the Stipulation as fair, reasonable, adequate, and in the best interests of PG&E and the shareholders of PG&E Corporation, and directs that the Settlement be consummated in accordance with the terms and conditions set forth in the Stipulation.

"The Court hereby dismisses on the merits and with prejudice the Action and all Released Claims. . . .

"Upon the Effective Date, all Releasing Parties shall have and by operation of this Judgment shall be deemed to have, fully, finally, and forever waived, released, relinquished, discharged, and dismissed any and all Released Claims against the Released Persons.

"Upon the Effective Date, all Releasing Parties shall have and by operation of this Judgment shall be deemed to have covenanted not to sue the Released Persons with respect to the Released Claims, and shall be forever barred and enjoined from commencing, prosecuting, instigating or in any way participating in the commencement or prosecution, in any court of law or equity, arbitration tribunal, or administrative or other forum, of any Released Claims against any of the Released Persons and of all claims arising out of, relating to, or any way connected with the institution, prosecution, assertion, settlement, or resolution of the Action, the Additional Derivative Cases or the Released Claims. [¶] . . . [¶]

6

"The Court hereby approves an aggregate Fee and Expense Award in the amount of twenty-five million five hundred thousand dollars ($25,500,000.00) in accordance with the terms of the Stipulation, finds that such Fee and Expense Award is fair and reasonable, and directs said amount to be paid to Settling Plaintiffs' Counsel as provided in the Stipulation, such amounts to cover all fees and expenses of Plaintiffs' Counsel in the Additional Derivative Claims as well. [¶] . . . [¶]

"The Court hereby retains jurisdiction pursuant to CCP section 664.6 to enforce the terms of the settlement . . . . [¶] . . . [¶]

"Judgment shall be, and hereby is, entered dismissing the Action with prejudice and on the merits. The Court finds that this Judgment is a final, appealable judgment and should be entered in accordance with applicable law."

No notice of appeal was filed from the July 18, 2017 judgment.

## 2.    August 17, 2017 Order

One month after entry of the judgment, and without any further hearings, on August 17, 2017 the trial court issued its "Final Order of the Court Allocating Attorneys' Fees and Costs Pursuant to Final Approval of Settlement":

"This order follows the approval of the Shareholder Derivative Action on July 18, 2017. At that time the court continued its jurisdiction to make a final allocation of the $25 Million in attorneys' fees and $500,000 in costs incurred pursuant to the approved settlement. The court has now received the recommendation of the three special masters as well[ ] as numerous records from plaintiffs' counsel. The court wishes to thank the special masters for their combined efforts in resolving the underlying dispute and this fee and cost allocation. This court has no doubt that this case would never have resolved but for their tireless efforts.

"The court certainly echoes the sentiments of the special masters as to the factors it has considered in issuing this final order. Those factors include but are not limited to the following: the results and benefits achieved by counsel; the amount of time and efforts of counsel; the relative complexity of this litigation; the risks incurred by counsel including the uncertainty of any recovery in a shareholder derivative action and the expenses advanced in furtherance of the litigation.

7

"And although the court expressed some uncertainty during the preliminary approval hearing, it became abundantly clear that to the court, the most important considerations in approving the settlement were the corporate therapeutics that PG&E agreed to implement ensuring the continuing safety of San Bruno and the County of San Mateo.  Additionally, these corrective actions will benefit the company and all the communities it serves in the future.  The opinions of Drs. Michael [Klausner] and David Larcker were a major part of the court's consideration – and this was advanced by two law firms: The Cotchett firm and The Corey firm. The court also notes that two of the requests apply to cases filed in other courts that were stayed pending the results of this coordinated proceeding.

"The court also notes that it has been the sole judge in this coordinated proceeding since April, 2011.  The court is acutely aware of the participation and contribution of all counsel and this fee and cost award reflects that determination by the court.  The court therefore makes the final and non-appealable order of attorney's fees and costs.  This allocation applies to the named firms and all associated counsel."

The court's order lists the name of each counsel and the sums awarded for attorney fees and costs.

### 3.    August 21, 2017 Order

On August 21, 2017, the trial court entered the following order:

"The court has just received a letter from Frank Pitre requesting direction from the court given the conflicting requests for the funds now being held in trust.  In its order of August 17, 2017 the court indicated that the order applied to 'all named firms and all associated counsel.'  Thus, the allocation to the Berman firm includes any payment due to Mr. Ri[g]rodsky and Ms. Goodman. The court carefully reviewed all submissions from counsel and the recommendations of the special masters in making its final order of August 17. As the court noted in that order, the order was final and non-appealable.  The court is aware that all counsel have waited many years for the matter to conclude and the court once again expresses its gratitude for the efforts of all counsel in reaching this successful conclusion.  The court now orders the Law Offices of Cotchett, Pitre and McCarthy to immediately distribute the funds it now holds in trust in conformity with the court's August 17, 2017 order."

### 4.    August 24, 2017 Order

On August 24, 2017, the trial court issued another order, in which it stated as follows:

"The court has just received an inquiry from the three special masters indicating that certain plaintiffs' counsel asked the three special mediators to release their recommendations to the court concerning the court's allocation of attorney fees and costs. The court notes that it has carefully avoided any matter subject to the mediation privilege pursuant to [E]vidence [C]ode section[s] 1115, 1119. The court further notes that the court ordered, at the request of plaintiffs' counsel, that the issue of fee and cost allocation would be first submitted to the special masters with a recommendation solely to the court. The final determination of the allocation of fees and costs has always rested solely with the court. The court has previously indicated that it considered the recommendations of the special masters as one of the factors in making the final order of allocation. This recommendation is also subject to the mediation privilege and the court orders that none of the special [m]asters release their report and recommendations to any counsel. The court appreciates the efforts of counsel in resolving this matter. This, however, must be the final inquiry and the court will issue no further orders on the subject and allow[ ] no further communication with either the court or the special masters. The court once again refers counsel to its final order clarifying that the court, and only the court, would make the final allocation of fees and costs. The court will not consider any further application or motion on this subject."

On August 30, 2017, Sender filed a timely notice of appeal challenging the August 17, 21, and 24, 2017 orders, which are appealable as orders made after an appealable judgment entered on July 18, 2017. (Code Civ. Proc., § 904.1, subds. (a), (b), see *McConnell v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1985) 176 Cal.App.3d 480, 487.) Sender's listed counsel Hagens Berman Sobel Shapiro LLP, Rigrodsky & Long, P.A., and The Law Office of Debra S. Goodman P.C., filed an amended notice of appeal on October 24, 2017, naming Sender as appellant and adding counsel as additional appellants. Because Sender's appeal is properly before us based on his August 30, 2017 notice, and for purposes of this appeal Sender stands in the shoes of counsel, we dismiss the appeal based on the October 24, 2017 notice of appeal as unnecessary.

## DISCUSSION

Appellant, a settling plaintiff, challenges, on various grounds, the trial court's allocation of attorney fees and costs, as embodied in the court's three orders issued in August 2017. Respondents Bou-Salmon and Marini, two other settling plaintiffs, have

filed separate motions to dismiss the appeal, and, renew their request for dismissal in their responsive brief.

We agree with respondents, and conclude that dismissal of appellant's appeal is mandated because he waived his right to appeal as part of the stipulation of settlement in which the parties expressly and unequivocally agreed that the court's "determination on allocation shall be *final and nonappealable*." (Italics added.) The fact that the parties expressed their intent to waive their right to appeal in a "single sentence" does not lessen its effect. The stipulation of settlement, when read in its entirety, demonstrates the parties gave specific thought to the issue of appealability of the court's allocation decision. While the stipulation of settlement expressly contemplates appeals concerning the court's aggregate "Fee and Expense Award" (Paragraphs 6.2, 6.7), a separate provision (Paragraph 9.1) sets forth the parties' express agreement that the court's "allocation" of the "Fee and Expense Award" was to be final and "nonappealable." Moreover, while another provision of the stipulation of settlement also expressly contemplates appeals concerning the aggregate award of attorney fees and costs despite the global settlement (Paragraph 1.9), as noted, the parties purposefully included a provision that the allocation of any such award was to be final and "nonappealable."

*McConnell v. Merrill Lynch, Pierce, Fenner & Smith, Inc*., *supra*, 176 Cal.App.3d 480 (*McConnell*), a consumer class action case cited by respondents, is both instructive and dispositive. The trial court in *McConnell* approved a settlement agreement that provided for defendant to create a fund in a specified amount for the payment of claims by class members, attorney fees, and administrative costs. (*Id*. at pp. 484–485.) The agreement further provided that the trial court had complete discretion whether to refund to defendant or make additional payments to class members if there were any monies remaining in the settlement fund after the initial payment of claims, fees, and costs: " 'the decision of the Court . . . to exercise its discretion to increase the amounts to be paid to the class claimants . . . shall not be appealable by any of the parties to this Settlement Agreement.' " (*Id*. at pp. 485–486.) Subsequently, the appellate court dismissed defendant's challenge to the court's distribution of the excess settlement funds on the

10

basis that the defendant had waived his right to appeal. (*Id*. at pp. 487–489.) We conclude the *McConnell* language – "shall not be appealable" — is equivalent to the term "nonappealable" used in the stipulation of settlement in this case. Hence, the same outcome - dismissal of the appeal - is mandated. [2]

In opposing dismissal of his appeal, appellant's overarching premise is that "[o]ne sentence in the settlement document does not insulate the orders on review from appellate scrutiny" because "[f]air process compels reversal here." According to appellant, the court committed structural errors, which cannot be waived, (1) by failing to allow disclosure of the panel's allocation recommendation to the parties with an opportunity to brief and argue its effect at a hearing, and (2) by "ignoring the primacy of lodestar in awarding fees," in violation of the "core precepts of California attorney fee jurisprudence." At oral argument, appellant focused on the August 24 order in which the trial court decided the panel's allocation recommendation was subject to the mediation privilege and ordered that the panel was not to release its recommendation to any counsel. Appellant therefore asks us to reverse and remand for a new allocation proceeding, with directions to the trial court to (1) reveal the panel's allocation recommendation and allow the parties to brief and argue its effect, (2) conduct a lodestar calculation for each firm being awarded fees, and (3) if necessary, "obtain more information from the fee applicants."

However, appellant's argument misconstrues the issue before us, which is whether appellant waived his right to appeal the August 2017 orders. "It is well-settled that a

---

[2]     Despite respondents' citation to *McConnell* in both their separate motion to dismiss and responsive brief, appellant fails to address the case in either his opposition to the motion to dismiss or his reply brief. Instead, appellant relies on *Ruiz v. California State Automobile. Assn. Inter-Insurance Bureau* (2013) 222 Cal.App.4th 596 (*Ruiz*), for the general proposition that a waiver of the right to appeal must be clear and express. However, the *Ruiz* court specifically discusses *McConnell* and acknowledges that, given the language used in *McConnell*, "it is not surprising that when the defendant [in that case] later attempted to appeal the trial court's ruling [on the distribution of the excess funds], the court held that the defendant had waived his right to appeal, and dismissed." (*Ruiz*, *supra*, at p. 604.)

11

party may expressly waive its right to appeal subject to only a few conditions: [¶] 1. The attorney must have the authority to waive a party's right to appeal. [¶] 2. The waiver must be express and not implied. [¶] 3. The waiver must not have been improperly coerced by the trial judge. [Citation.]" (*McConnell*, *supra*, 176 Cal.App.3d at p. 488.) Appellant has failed to demonstrate that any of the conditions apply in this case so as to preclude our giving effect to his waiver of appeal. He contends only that appellate review is mandated because of the aforementioned alleged structural errors, and requests the remedy of reversal and remand for a new allocation. However, the settlement agreement did not require the court to reveal the panel's allocation recommendation, hold a hearing to allow briefing and argument on that recommendation, or issue a decision specifying its lodestar calculations. Rather, the entirety of the agreement regarding allocation was that the issue would be considered by a panel of three retired justices, followed by the trial court making its allocation determination, which "shall be final and nonappealable." In addition, as made clear in its August 17 order, the court provided appellant with the opportunity to produce billing records and briefings to assist the court in making its allocation. Thus, even assuming any merit to appellant's substantive claims, we could not grant him the requested relief as he expressly waived his right to appeal the trial court's allocation determination.

In sum, we conclude dismissal of the appeal of the August 2017 orders is required because appellant waived his right to appeal the trial court's allocation decision by express agreement in the stipulation of settlement. In light of our determination, we do not address any other grounds for dismissal presented in respondents' brief or separate motions to dismiss the appeal and amended appeal, and we deny as moot respondents' separate motions to strike certain declarations submitted in opposition to the motion to dismiss and to augment the record.

## DISPOSITION

The appeal, filed on August 30, 2017, and the amended appeal, filed on October 24, 2017, are dismissed. Respondents Hind Bou-Salman and Louis Marini's separate

motions to dismiss the appeal and amended appeal, to strike certain declarations submitted in opposition to the motion to dismiss, and to augment the record, are denied. Respondents Hind Bou-Salman and Louis Marini are awarded costs on appeal.

_____

Petrou, J.


WE CONCUR:


_____

Siggins, P.J.


_____

Goode, J.*

---

*Retired Judge of the Superior Court of Contra Costa County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

*A152330/PG&E San Bruno Fire Derivative Cases*

Trial Court:   San Mateo County Superior Court

Trial Judge:   Hon. Steven Dylina

Counsel:       Hagens, Berman, Sobol & Shapiro, Steven Berman, Kevin Green, for
                    Derivative Plaintiff.
               Corey, Luzaich, de Ghetaldi, Nastari & Riddle, Dario de Ghetaldi, for
                    Derivative Plaintiff.
               Cotchett, Pitre & McCarthy, Frank Pitre and Mark Molumphy, for
                    Derivative Plaintiff.

               Latham & Watkins, Robert Perrin, for Defendants.