[No. B105110. Second Dist., Div. Four. Aug. 29, 1997.]

ELLIOTT & TEN EYCK PARTNERSHIP et al., Plaintiffs,
Cross-defendants and Appellants, v.
CITY OF LONG BEACH, Defendant, Cross-complainant and Respondent.

496

COUNSEL

George A. Hart, Jr., and Clark Heggeness for Plaintiffs, Cross-defendants and Appellants.

John R. Calhoun, City Attorney, and Carol A. Shaw, Deputy City Attorney, for Defendant, Cross-complainant and Respondent.

OPINION

EPSTEIN, J.—A dispute arose between parties to a contract. Each sued the other. The contract had a dispute resolution provision, applicable to this dispute, by which each side would choose an expert, the two selected would choose a third, and the three would resolve the issue. The parties' dispute ripened into litigation: A complaint and cross-complaint were filed. After these had pended in court for some time (with an unsuccessful effort to utilize the arbitration provision), the supervising judge suggested a solution. It was that the parties agree to have a sitting judge in the judicial district, of their choice, hear and decide the case as an arbitrator, rendering a final decision not subject to appeal. Both sides agreed to that approach, and readily agreed on the judge to whom the case would be tried. It was tried before that judge in windows of time occurring over a period of months. He ultimately issued a decision, on court-captioned paper, which he styled "Decision of Arbitrator." It favored the plaintiffs. The other side, then losing, asked for a "supplemental award," because many of the issues had not been decided. The judge issued such an award, a supplement, which modified the award. As modified, the award favored the cross-complainant. The plaintiffs then sought to vacate the award.

The principal issue in this case is whether, in hearing and deciding the case, the judge was exercising judicial powers or whether he was an arbitrator acting under contract arbitration, and subject to the strictures of the California Arbitration Act (Act). (Code Civ. Proc., § 1280 et seq.; all further statutory references are to that code unless another is specified.) The distinction is critical. If the judge was acting as a judge, he had power to issue both the initial and the supplemental decision, and together they comprised a final decision enforceable as a judgment. But if the judge was acting as a contract arbitrator subject to the restrictions of the Act, the supplemental award and, probably, the initial award, were both invalid. The reason is that each violated one or another of the rules governing arbitration under the Act. The result, in that case, is that the parties achieved no resolution of their dispute

at all. The trial court (acting through a different judge) implicitly concluded that the parties did not intend to so limit the judge, for he denied the plaintiff's motion to vacate the award.

On full review of the materials submitted to us, we conclude that the trial court reached a correct decision, which we affirm.

## FACTUAL AND PROCEDURAL SUMMARY

Appellants are Elliott & Ten Eyck Partnership, a limited partnership, and two of its general partners. The partnership was the lessee under an oil and gas lease with the City of Long Beach (City), the respondent on this appeal. The lease and related documents are complex and appear to be comprehensive. There is no need to discuss them in detail, for only a single provision is especially important to our decision. Section 1.11.2 of the lease gives the City an option to purchase or take in kind certain dry gas, paying the prevailing market price in the Los Angeles metropolitan area: "The price shall be determined by a panel of three experts. Each party shall choose one member of the panel and they in turn shall choose a third member."

The partnership parties filed their complaint in March 1991. In it they alleged that the City had taken delivery of dry gas but had not paid market value for the gas it received. Damages and an accounting were sought. The partnership parties set out the arbitration clause and offered to have the value of the gas determined according to its terms.

The City demurred, raising among other issues, the failure to utilize the arbitration provision of the contract. The demurrer was overruled, and the City filed an answer. Both sides inform us that the parties tried to invoke the arbitration provision, but could not agree on the neutral expert. The City then sought permission to file a late cross-complaint; it was allowed to do so, and did, in September 1993. During a trial-setting conference in November 1994, the supervising judge of the district asked whether the parties would agree to nonbinding arbitration. They would not. He then suggested a different solution: that the parties select a judge to hear the matter; and that the judge they select, acting like an arbitrator, rule on all issues in the case and render a binding, nonappealable decision. The parties agreed to that approach, and further agreed that Honorable Richard F. Charvat, a judge sitting in the district, would be asked to hear and decide the case.

The proceedings before the supervising judge were not reported, and we depend on declarations for their substance. The initial proceedings before Judge Charvat were reported, and occurred on the same day. The following colloquy is reported:

"The Court: And who wants to bring the record up to speed as to why this now is before the court?

"Mr. Heggeness [attorney for plaintiffs]: Well, the case has been assigned to you, Judge Charvat, for a compulsory arbitration in which you yourself will make the rules to govern the trial.

"There will be no appeal.

"Whatever your decision is would be final.

"Ms. Shaw [counsel for the City]: And we were informed that that would be for all matters, including law and motion.

"Mr. Heggeness: It's a meet-one-purpose-judge case, only instead of being a judge, it's going to be a compulsory arbitration.

". . . . . . . . . . . . . . . . . . . . . . . . . .

"The court: So, all right.

"And so this will be binding arbitration in this department at a date to be agreed upon toward the end of next February, I mean.

". . . . . . . . . . . . . . . . . . . . . . . . .

"The Court [to Mr. Elliott, introduced as a partner]: You agree to this procedure as to binding arbitration?

"Mr. Elliott: Correct.

"The Court: You know that by agreeing to that, you are giving up your right to appeal any ruling that I may make, and you are agreeing that I'll be the final fact-finder in this case binding to both sides.

"Mr. Elliott: I understand that.

". . . . . . . . . . . . . . . . . . . . . . . . .

"The Court: Do you agree to that procedure as outlined here this morning on the record?

"Mr. Elliott: Yes, I do.

"The Court: Counsel join?

"Mr. Heggeness: Yes, I do."

The case was tried on four separate days in 1995: February 24, March 6, July 17 and July 18. Closing arguments were presented on August 14 and 16. On September 25, 1995, Judge Charvat issued his "Decision of Arbitrator." The decision was on court paper bearing the Los Angeles Superior Court caption. In it, Judge Charvat found that the City had been unjustly enriched, and that the partnership was entitled to recover for a specified quantity of gas that had been inadvertently delivered to the City. The signature appeared over the statement:

> Richard F. Charvat
> Arbitrator

In early October, appellants filed a motion in Judge Charvat's department seeking to have themselves declared the prevailing party under section 1021, or under section 1717 of the Civil Code, or both. The City opposed the motion and asked that it be declared the prevailing party. At the same time, the City filed a separate motion seeking a supplemental decision concerning several issues that had been tried but not decided. The partnership parties opposed this request, arguing both that it was unauthorized by the arbitration statute and on the merits. Ten days later, on October 20, 1995, Judge Charvat issued his "Supplement to Decision of Arbitrator Filed September 25, 1995." In this document several paragraphs were modified by the addition of new language, and new paragraphs were added. The final paragraph stated, "The court shall retain jurisdiction to enforce this award."

The partnership parties responded with a notice of motion to vacate the decision. Their chief argument was that in issuing the supplement, Judge Charvat had exceed the statutory authorization given arbitrators to correct awards. The City opposed the motion, arguing that the amended award should stand. It argued that the parties had never intended to limit Judge Charvat's authority to that of an arbitrator under the Act, and that their intention was to have the judge fully and finally decide the dispute. A supporting declaration stated that "Judge Charvat ran this proceeding with observance of all rules of evidence and judicial procedures. The parties waived a transcript because it had been stipulated the decision would be binding and nonappealable. This case had many witnesses over five days that were examined and cross-examined with evidence which was all admitted by mutual stipulation or with proper foundation, . . . The testimony of all witnesses was taken under oath given by the court. Objections during trial

abounded which were all promptly ruled upon at the time by Judge Charvat." These statements were not disputed.

The motion to vacate was heard by a different judge. The parties submitted on their papers, and the court denied the motion. It did not provide its reasons. The partnership parties filed a timely notice of appeal.

Whether viewed as an appeal from a judgment or from an order denying a motion to vacate an arbitration award, the appeal lies. (§§ 904.1, subd. (a), 1294, subd. (b).)

## DISCUSSION

Appellants point out that their appeal "does not challenge the arbitrator's conclusions; it is based, essentially, upon motions, documents, and reports filed in the arbitration and they are included in the clerk's transcript." Rather, "[t]he gist of this appeal is that the arbitrator has no power to amend, modify, supplement or change his decision" because that power is denied him by sections 1284 and 1286.6. These succinct statements free us from the need to review the merits of the contract dispute, and from deciding who owes what to whom. But it assumes the conclusion that Judge Charvat, in hearing and deciding the case, was limited to the authority of a contract arbitrator under the Act. Whether he was or not is the central issue in this appeal.

There is no doubt but that, if Judge Charvat was acting as a contract arbitrator subject to all of the restrictions of the Act, his supplement to decision was void. It is, apparently, an ancient rule that "when arbitrators have published their award by delivering it to the parties as the award, that it is not the subject of revision or correction by them, and that any alteration without the consent of the parties will vitiate it." (*Porter* v. *Scott* (1857) 7 Cal. 312, 316.) The briefing in the *Porter* case cited precedent back to a Yearbook of Henry VI, as well as other venerable authority. (See also *Krautner* v. *Johnson* (1961) 189 Cal.App.2d 717, 718 [11 Cal.Rptr. 447] ["A change in substance would require vacation of the award . . . if it resulted in prejudice to either party . . . ."].)

The Act, which became effective in September 1961, provides a comprehensive treatment of contract arbitration. Section 1284 codifies the rule

against changes in the award.[1] Some amelioration from the stringency of the rule is provided in a referenced provision of section 1286.6, which allows correction of an award, but in very narrow terms. A court may correct and confirm an award as corrected for evident miscalculation of figures or evident mistake in a description, where the award exceeds the powers of the arbitrator (if the correction does not affect the merits of the decision on the controversy submitted), and for nonsubstantive matters of form.[2]

Cases decided under the Act have emphasized the narrow scope of an arbitrator's authority to modify an award. (See *Banks* v. *Milwaukee Ins. Co.* (1966) 247 Cal.App.2d 34, 36 [55 Cal.Rptr. 139, 36 A.L.R.3d 933]; *Severtson* v. *Williams Construction Co.* (1985) 173 Cal.App.3d 86, 92 [220 Cal.Rptr. 400].) ■ Appellants assert, and respondent does not dispute, that the supplemental award effected a substantive change in the award. If Judge Charvat's authority was limited by section 1284, the supplement was void.

■ Nor is that all. The *Porter* court also held that ". . . where parties refer all their differences to arbitration, it is the duty of the arbitrators to pass upon the whole subject in controversy, and if it appears upon the face of the award that they have not disposed of the whole matter but have left a part open: or if the terms of the award be such as to render a further inquiry

---

[1]Section 1284 provides: "The arbitrators, upon written application of a party to the arbitration, may correct the award upon any of the grounds set forth in subdivisions (a) and (c) of Section 1286.6 not later than 30 days after service of a signed copy of the award on the applicant. [¶] Application for such correction shall be made not later than 10 days after service of a signed copy of the award on the applicant. Upon or before making such application, the applicant shall deliver or mail a copy of the application to all of the other parties to the arbitration. [¶] Any party to the arbitration may make written objection to such application. The objection shall be made not later than 10 days after the application is delivered or mailed to the objector. Upon or before making such objection, the objector shall deliver or mail a copy of the objection to the applicant and all the other parties to the arbitration. [¶] The arbitrators shall either deny the application or correct the award. The denial of the application or the correction of the award shall be in writing and signed by the arbitrators concurring therein, and the neutral arbitrator shall serve a signed copy of such denial or correction on each party to the arbitration personally or by registered or certified mail or as provided in the agreement. If no denial of the application or correction of the award is served within the 30-day period provided in this section, the application for correction shall be deemed denied on the last day thereof."

[2]Section 1286.6 provides: "Subject to Section 1286.8, the court, unless it vacates the award pursuant to Section 1286.2, shall correct the award and confirm it as corrected if the court determines that: [¶] (a) There was an evident miscalculation of figures or an evident mistake in the description of any person, thing or property referred to in the award; [¶] (b) The arbitrators exceeded their powers but the award may be corrected without affecting the merits of the decision upon the controversy submitted; or [¶] (c) The award is imperfect in a matter of form, not affecting the merits of the controversy."

necessary to ascertain a sum of money to be paid, or some act to be done, it is void and will be set aside." (*Porter* v. *Scott, supra,* 7 Cal. at p. 316.) ▉ Respondent asserts, and appellants do not dispute, that the September 25 decision did not dispose of the entire dispute between the parties that was tried before Judge Charvat. Based on *Porter* it would seem that the September 25 decision, standing alone, is void.

The result of all this is that, if appellants' position is correct, the entirety of the proceedings before Judge Charvat was for naught, and the parties are relegated to where they were nearly three years ago, when their case was assigned to Judge Charvat. That, in fact, is the position appellants argued to the trial court in their motion to vacate.

We are satisfied that both parties and Judge Charvat thought they were proceeding in an "arbitration." Each side repeatedly used arbitral terms in their papers, and the judge referred to himself as an "arbitrator." In a broad—and accepted—sense of the term, they were correct.

There is surprisingly little California authority on just what an arbitration is. The subject was thoroughly canvassed in a recent decision, *Cheng-Canindin* v. *Renaissance Hotel Associates* (1996) 50 Cal.App.4th 676 [57 Cal.Rptr.2d 867]. This was a wrongful termination case in which the employer had established a "review committee" to decide disputes. The procedure was described in an employee handbook as "mandatory contractual arbitration." The principal issue in the case was whether it was arbitration at all.

The court reviewed a legal dictionary definition of "arbitration," and gleaned the following attributes of a "true arbitration agreement": "(1) a third party decisionmaker; (2) a mechanism for ensuring neutrality with respect to the rendering of the decision; (3) a decisionmaker who is chosen by the parties; (4) an opportunity for both parties to be heard, and (5) a binding decision." (*Cheng-Canindin* v. *Renaissance Hotel Associates, supra,* 50 Cal.App.4th at p. 684.) Based on its review of California decisions, the court concluded that procedures characterized by California courts as "arbitration" have these attributes. (*Id.* at p. 685.)

The *Cheng-Canindin* decision also pointed out something else: The fact that a procedure is labeled as "arbitration" does not mean that it is (it was held not to be in that case), and a procedure may constitute arbitration even though it does not bear that characterization. (50 Cal.App.4th at pp. 686, 691.)

The contract provision in this case does not use the term "arbitrate" or any of its derivatives, yet both sides acknowledge that it described an arbitral

procedure, as it surely did. The proceeding before Judge Charvat was described as an "arbitration," and, strictly speaking, it was. The judge was a third party decisionmaker, he was neutral, he was selected by the parties, the parties were heard in a trial, and the decision was binding, since the parties had waived the right to appeal.

But it does not follow that the proceeding over which Judge Charvat presided was a contract arbitration under the Act. Judge Charvat was, at all times, acting in his official capacity as a judicial officer. He was not paid by the parties nor was he privately retained by them; he conducted the proceedings in court, where he swore witnesses and presided over a proceeding that, in most of its aspects, so closely resembled a bench trial that it must have been hard to tell the difference. While he signed papers referring to himself as an arbitrator, the papers also bore the standard judicial imprint ("Superior Court of the State of California in and for the County of Los Angeles") and his supplemental order provided that "the court" shall retain jurisdiction to enforce the award.

He was, in short, acting as a judicial officer trying a case. As such, he was bound to be faithful to the law (Cal. Code Jud. Conduct, canon 3A(3)), a stricture that bound him to follow statute and decisional law in deciding matters submitted to him for decision. Indeed, we doubt that the parties could, by stipulation, free Judge Charvat from following the law and acting as a judge trying a case. (See Cal. Const., art. VI, § 17 [judge may not accept public employment other than as judge]; *Old Republic Ins. Co.* v. *St. Paul Fire & Marine Ins. Co.* (1996) 45 Cal.App.4th 631, 638 [53 Cal.Rptr.2d 50] [parties could not, by stipulation, empower appellate court to review legal correctness of award and deprive trial court of authority to do so].)

But the parties can agree to waive some normal trial procedures, such as having a reporter's record of the proceedings, and the right to appeal. (See 9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 208, p. 263 ["A party may stipulate to waive the right of appeal."].)

Viewing the record as a whole, we believe the essence of the parties' agreement was that the judge they selected would resolve their case, once and for all, with finality and without the possibility of appellate review. In fact, the specific and repeated express waiver of the right to appeal would have had little, if any, purpose if the parties intended Judge Charvat to be a contract arbitrator under the Act, since contract arbitration is generally binding and not subject to the appellate review given to other cases. (See *Moncharsh* v. *Heily & Blase* (1992) 3 Cal.4th 1, 8 [10 Cal.Rptr.2d 183, 832

P.2d 899] [in case decided more than two years before stipulation in this case, Supreme Court reiterated general rule of arbitral finality].) It would have been extraordinary if the parties and the court intended to forego the possibility of correcting an incomplete decision. But that is what they would have done if the proceedings were held to have been under the Act. It would be even more extraordinary for the parties to be deemed to have authorized the judge to impose remedies not recognized by California law. (See *Advanced Micro Devices, Inc.* v. *Intel Corp.* (1994) 9 Cal.4th 362, 373 [36 Cal.Rptr.2d 581, 885 P.2d 994].) Indeed, had they intended the judge to be bound by all aspects of the Act, we expect they would have said so. They did not.

As a judicial officer, Judge Charvat was free to issue a decision and to change it before it became final. (§ 662.) That is what he did.[3]

This case joins others in which the role of the decisionmaker is something less than clear because of the nomenclature used by the parties. (See principally *In re Marriage of Assemi* (1994) 7 Cal.4th 896, 906 [30 Cal.Rptr.2d 265, 872 P.2d 1190] [issue was whether retired judge was acting as temporary judge or arbitrator, since terminology used encompassed both, for purposes of section 664.6 requirement that judicially supervised settlement be in writing or "before the court"].) There was some degree of hybridization in this case, but we believe it was the overarching and commanding objective intent of the parties to have a judge, acting as a judicial officer, decide their case. The proceedings were not those of contract arbitration, subject to the Act, but rather those of a bench trial subject to the waivers of the parties (chiefly the right to appeal) that conferred an extraordinary effect to the decision.

## DISPOSITION

The order is affirmed. Respondent is to bear its costs on appeal.

Vogel (C. S.), P. J., and Baron, J., concurred.

---

[3]We note that neither side has requested relief, under section 473 or otherwise, based on mutual mistake of law. (See 8 Witkin, Cal. Procedure, *supra*, Attack on Judgment in Trial Court, § 161 et seq., p. 663 et seq.) Nor, understandably, has a claim been made that the agreement to "arbitrate" was infirm because it was oral. (See § 1291.)