[Nos. B188984, B191645. Second Dist., Div. Five. Dec. 15, 2006.]

GARY GUSEINOV, Plaintiff and Respondent, v.
STAN BURNS, Defendant and Appellant.

COUNSEL

Stephan, Oringher, Richman, Theodora & Miller and Robert M. Dato for Defendant and Appellant.

Lee & Kaufman, Martin J. Kaufman; Michelman & Robinson, Carol Boyd and Tahereh Mahmoudian for Plaintiff and Respondent.

OPINION

**TURNER, P. J.—**

## I. INTRODUCTION

Defendant, Stan Burns, appeals from a December 7, 2005 judgment and an April 13, 2006 amended judgment entered on an arbitration award in favor of plaintiff, Gary Guseinov. At issue is whether the arbitration award should have been vacated because the arbitrator failed to disclose he had served as an uncompensated mediator in another matter as part of a superior court program. In that matter, the arbitrator served as a pro bono mediator where plaintiff's attorney represented a party who has nothing to do with this case. We find there is substantial evidence no ground for disqualification exists; hence, the arbitrator had no duty to disclose his prior service as an uncompensated mediator. As a result, the trial court did not err in refusing to vacate the arbitration award because the arbitrator failed to disclose his prior service as an unpaid mediator. We affirm the judgment.

## II. BACKGROUND

Plaintiff filed this action against defendant on October 10, 2003. Plaintiff asserted contract breach and tort causes of action, among others, based on a May 19, 2003 settlement agreement arising out of a failed business relationship. The May 19, 2003 settlement agreement included a clause requiring final and binding arbitration in Los Angeles, California pursuant to the American Arbitration Association's commercial dispute resolution procedures or expedited procedures. In a stipulation filed on December 16, 2003, the parties agreed to submit this action to arbitration. On September 12, 2005, the arbitrator awarded plaintiff more than $5 million in damages. Also named as a codefendant was Synergy Ventures, Inc., doing business as Direct Synergy. The codefendant has filed a voluntary bankruptcy proceeding. The present appeal is stayed as to the codefendant.

The settlement agreement expressly stated it was to be governed by the laws of the State of California. The arbitration clause of the settlement agreement stated in pertinent part: "Arbitration. Any controversy or dispute arising out of or relating to this Agreement, or the breach thereof, shall be resolved by arbitration conducted in accordance with the Commercial Dispute Resolution Procedures of the American Arbitration Association ('AAA') and/or the expedited procedures with respect to claims under Section 2(b) [involving defendant's purchase of plaintiff's stock in the company] or any other claim for which the Expedited Procedures apply and judgment upon the award rendered by the arbitral tribunal may be entered in any court having jurisdiction thereof. The arbitration tribunal shall consist of a single arbitrator . . . . The place of arbitration shall be Los Angeles, California, U.S.A., unless the Parties shall have agreed to another location . . . . The arbitrator's final award may be entered in any court in the United States and worldwide having jurisdiction thereof. The arbitrator's final award shall be binding and shall be fully enforceable . . . . The Parties waive any right to appeal the arbitral award; to the extent a right to appeal may be lawfully waived. Each Party retains the right to seek judicial assistance: (i) to compel arbitration; (ii) to obtain interim measures of protection prior to or pending arbitration; (iii) to seek injunctive relief . . . , and (iv) to enforce any decision of the arbitrator, including the final award. The arbitration proceedings contemplated by this Paragraph shall be as confidential and private as permitted by law[,] . . . provided, however, that this confidentiality provision shall not prevent a petition to vacate or enforce an arbitral award . . . ."

On June 16, 2004, following his selection, the arbitrator completed an American Arbitration Association "Arbitrator Disclosure Worksheet." The arbitrator therein represented among other things: he was not serving and had not served "as a dispute resolution neutral other than as an arbitrator in another pending or prior case involving a party or lawyer in the current arbitration"; he had no "professional relationship" with a lawyer for a party; and there was no "other matter that might cause a person aware of the facts to reasonably entertain a doubt that [he] would be able to be impartial."

At the first meeting of the attorneys in this matter, on or about August 12, 2004, the arbitrator asked plaintiff's counsel, Martin J. Kaufman, if they had previously met. Mr. Kaufman stated the arbitrator had earlier served as a volunteer superior court mediator in an unrelated matter. In that unrelated lawsuit, Mr. Kaufman had represented a party. The arbitrator did not recall the prior mediation. The attorneys representing defendant at that time acknowledged the disclosure, agreed to the arbitrator, and did not make an immediate effort to secure disqualification. Mr. Kaufman subsequently declared: "Neither I, nor this office has ever employed [the arbitrator] nor remunerated him in any way for any services. Neither I, nor any person in

[this] office have had or currently have any professional or personal relationship with the arbitrator of any kind, nor has he served as an arbitrator in any cases they have litigated. There has been no attorney-client relationship between [the arbitrator] and myself nor with [plaintiff]."

On or about May 20, 2005, during the arbitration, defendant filed a motion to disqualify Mr. Kaufman as plaintiff's counsel. In support of the disqualification motion filed with the arbitrator, plaintiff declared: "I arrived and entered the arbitration hearing room in the morning of May 12, 2005. Neither of my attorneys were present. The only one else in the room was [Mr. Kaufman]. [Mr. Kaufman] said to me: 'I know I shouldn't be talking to you directly without Rod here, but we can speak with Rod about this later.' [Mr. Kaufman] then asked me questions regarding my evaluation of the case and settlement position, and tried to persuade me to change my settlement position. [Mr. Kaufman] then told me that he wanted to speak with me further about it later in the day, and didn't want my attorney . . . to be present." At another place in his declaration, defendant related: "Earlier during the evidentiary hearing, in my presence, while never having been sworn and testified, [Mr. Kaufman] interrupted the taking of testimony, and stated that [the corporate codefendant] had emailed a virus to his office and damaged his computer. The [a]rbitrator stated he took the accusation serious[ly], and if true, he would take actions to deal with it." In support of defendant's motion to vacate the arbitration award filed in the trial court, he declared: "On [May 20, 2005], [Mr. Kaufman] testified under oath . . . in response to a question posed . . . by [the arbitrator], that [the arbitrator] should believe [Mr. Kaufman] rather than [plaintiff] . . . because of [the] prior relationship between [the arbitrator] and [Mr. Kaufman]." An attorney for defendant, Rod Rummelsburg, declared: "During the evidentiary hearing on Friday, May 20, 2005, attorney-witness Mr. Kaufman indicated that [the arbitrator] knew Mr. Kaufman prior to the instant arbitration in an apparent attempt to bolster Mr. Kaufman's credibility. At that point, [the arbitrator] orally disclosed and admitted that he had served as a mediator in a prior mediation where Mr. Kaufman represented one of the parties. This was the first time that I was made aware of any such prior relationship between Mr. Kaufman and [the arbitrator]."

The arbitrator denied the motion to disqualify Mr. Kaufman. As set forth in the arbitration award, the arbitrator concluded the accusations were for the State Bar to consider: "During the evidentiary hearing, at the end of the day on May 17, 2005, counsel for [defendant] served a previously prepared motion to disqualify [plaintiff's] counsel, for dismissal of the [plaintiff's] claims and for other sanctions, on the alleged ground that [plaintiff's] counsel had initiated unauthorized settlement conversations with [defendant]. Significantly, that motion was not served until counsel and the parties actually had engaged in extended but unsuccessful settlement discussions over a period of

several days. After hearing argument, the Arbitrator denied the [defendant's] motion on the principal ground that the [defendant's] accusation was a matter for the State Bar to consider rather than a basis for the type of relief requested by [defendant]." Later, the award states, "Accordingly, although [defendant] and [plaintiff's] counsel Martin Kaufman offered different versions of the interaction that allegedly occurred, the Arbitrator found no need to resolve the 'swearing match' between them."

Just prior to closing argument on June 3, 2005, defendant sought to disqualify the arbitrator by serving a notice of disqualification. This was the second disqualification request. The first disqualification request sought to disqualify Mr. Kaufman as plaintiff's counsel. The second request sought to disqualify the arbitrator. The arbitrator requested briefing as to the disqualification request by June 10, 2005. The parties proceeded with closing argument. In a June 6, 2005 letter to counsel, the arbitrator stated: "[Defendant's] pleading focuses on a 'pro bono' mediation that I handled as the mediator on September 23, 2003, in which [plaintiff's] counsel Martin Kaufman represented one of the parties. The mediation lasted approximately two-and-a-half hours, and resulted in full agreement by the parties. This was one of many dozens of 'pro bono' mediations that I have handled as the mediator over the years in conjunction with the Los Angeles County Superior Court ADR Program. The September 23, 2003 'pro bono' mediation was discussed with counsel on June 3, 2005, and earlier in these proceedings. [¶] On August 12, 2004, at the beginning of the first in-person preliminary hearing conference with all counsel in this case, Mr. Kaufman explained to me in the presence of other counsel that the reason he looked vaguely familiar to me was that he had been one of the counsel in a 'pro bono' mediation that I had conducted. Because I had little independent recollection of that mediation, Mr. Kaufman reminded me that it had resulted in full agreement between the parties. At that time, Mr. Kaufman and I both notified all counsel—including [defendant's] predecessor counsel . . .—of my role in the prior 'pro bono' mediation. That completed mediation did not appear to be an issue for either side on August 12, 2004. Not until Mr. Kaufman's passing reference to the mediation, at the evidentiary hearing on May 20, 2005, did [defendant's] current counsel express any concern regarding my role in that mediation." The arbitrator subsequently denied defendant's June 3, 2005 disqualification request. On June 14, 2005, and again on August 2, 2005, the American Arbitration Association ruled the arbitrator "will be reaffirmed as an arbitrator in the . . . matter" notwithstanding defendant's disqualification claim. The arbitrator issued his award in September 2005.

The parties filed cross-petitions to vacate and confirm the arbitration award in the trial court. The trial court granted plaintiff's petition to confirm the award. Also, defendant's petition to vacate the award was denied. The trial court concluded: "[Defendant] fails to show grounds to vacate the award.

Disclosure of the arbitrator's prior service as a pro-bono mediator in a case where Lee & Kaufman represented a party is not a matter requiring disqualification under Ethics Standard 10. Standard 10 does not include prior service as a mediator among its list of prior relationships that must be disclosed. Nor would the arbitrator's prior service as a mediator in an unrelated case 'cause a person aware of the facts to reasonably entertain a doubt that the arbitrator would be able to be impartial.' Even if disclosure were required, the absence of a written disclosure does not require vacation of the award. [Code of Civil Procedure][1] Section 1281.9[, subdivision] (b) only establishes disclosure requirements; it does not make failure to comply with them grounds for vacating the award. Those grounds are set forth in . . . Section 1286.2, which does not address the need for a writing. The disclosure was made within the time limits set by . . . Section 1286.2. *Azteca Constr. Inc. v. ADR Consulting, Inc.*, 121 Cal.App.4th 1156 [18 Cal.Rptr.3d 142 (2004)], cited by [defendant], does not require a different result. The *Azteca* court vacated the award because the arbitrator did not disqualify himself following a timely demand."

## III. DISCUSSION

### A. Appeal from the Original and Amended Judgments

The December 7, 2005 judgment awarded plaintiff "interest on the monetary damages assessed herein at the legal rate of 10% per annum from September 16, 2005 until the date of satisfaction in full" of the judgment pursuant to Civil Code section 3287. The amended judgment entered on April 13, 2006, added that the prejudgment interest from September 16, 2005, until the date of execution of the amended judgment was $299,126.53. Defendant contends the amended judgment supersedes the original judgment. We disagree. The amended judgment merely quantified the amount of prejudgment interest awarded in the original judgment. The amended judgment did not substantially change the original judgment. Therefore, the original judgment remained the one final judgment in this matter. (*ECC Construction, Inc. v. Oak Park Calabasas Homeowners Assn.* (2004) 122 Cal.App.4th 994, 1003, fn. 5 [19 Cal.Rptr.3d 340]; *Stone v. Regents of University of California* (1999) 77 Cal.App.4th 736, 743–744 [92 Cal.Rptr.2d 94]; *CC-California Plaza Associates v. Paller & Goldstein* (1996) 51 Cal.App.4th 1042, 1048 [59 Cal.Rptr.2d 382]; *Grant v. List & Lathrop* (1992) 2 Cal.App.4th 993, 996–998 [3 Cal.Rptr.2d 654].)

---

[1] All further statutory references are to the Code of Civil Procedure except where otherwise noted.

## B. Waiver of the Right to Appeal

Plaintiff contends defendant waived the right to appeal from the judgment on the arbitration award as part of their May 19, 2003 settlement agreement. The choice of law provision states in part, "This Agreement . . . shall be governed by the laws of the State of California . . . but shall not be governed by Section 1283.1 of the California Code of Civil Procedure, the application of which is hereby excluded." The May 19, 2003 settlement agreement arbitration clause includes the following: "The arbitrator's final award may be entered in any court in the United States and worldwide having jurisdiction thereof. The arbitrator's final award shall be binding and shall be fully enforceable. . . . The Parties waive any right to appeal the arbitral award; to the extent a right to appeal may be lawfully waived. Each Party retains the right to seek judicial assistance: (i) to compel arbitration; (ii) to obtain interim measures of protection prior to or pending arbitration; (iii) to seek injunctive relief . . . , and (iv) to enforce any decision of the arbitrator, including the final award. The arbitration proceedings contemplated by this Paragraph shall be as confidential and private as permitted by law[,] . . . provided, however, that this confidentiality provision shall not prevent a petition to vacate or enforce an arbitral award . . . ."

■ It is well settled, and defendant correctly concedes, that a party *can waive* the right to appeal. (E.g., *Hibernia Sav. & Loan Soc. v. Waymire* (1907) 152 Cal. 286, 287–288 [92 P. 645]; *Erlanger v. Southern Pac. R.R. Co.* (1895) 109 Cal. 395, 395–396 [42 P. 31]; *Pratt v. Gursey, Schneider & Co.* (2000) 80 Cal.App.4th 1105, 1108 [95 Cal.Rptr.2d 695]; *Lovett v. Carrasco* (1998) 63 Cal.App.4th 48, 53 [73 Cal.Rptr.2d 496]; *Elliott & Ten Eyck Partnership v. City of Long Beach* (1997) 57 Cal.App.4th 495, 504 [67 Cal.Rptr.2d 140]; *Bischel v. Fire Ins. Exchange* (1991) 1 Cal.App.4th 1168, 1172 [2 Cal.Rptr.2d 575]; *McConnell v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1985) 176 Cal.App.3d 480, 488 [222 Cal.Rptr. 228]; *Reisman v. Shahverdian* (1984) 153 Cal.App.3d 1074, 1088–1089 [201 Cal.Rptr. 194]; *Keroff v. Snyder* (1962) 208 Cal.App.2d 429, 431–432 [25 Cal.Rptr. 234]; 9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 208, pp. 263–264 & 2006 supp. pp. 83–84.) The Courts of Appeal have held, however, that any waiver of the right to appeal must be clear and express. "While the right to appeal may be waived by agreement (*Estate of Hart* (1962) 204 Cal.App.2d 634, 637 [22 Cal.Rptr. 495]), any such waiver should be clear and express (*Keroff v. Snyder*[, *supra,*] 208 Cal.App.2d [at pp.] 431–432; see also *Reisman v. Shahverdian*[, *supra,*] 153 Cal.App.3d [at p.] 1088)." (*Bischel v. Fire Ins. Exchange, supra,* 1 Cal.App.4th at p. 1172; accord, *Lovett v. Carrasco, supra,* 63 Cal.App.4th at p. 53 [waiver must be express and not implied]; *McConnell v. Merrill Lynch, Pierce, Fenner & Smith, Inc., supra,* 176 Cal.App.3d at p. 488 ["It is well-settled that a party may expressly waive its right to appeal"]; *Reisman v. Shahverdian, supra,* 153 Cal.App.3d at p. 1088

["The waiver of such a right of access to judicial review should be clear and express"].) Moreover, any doubt will be resolved against a waiver of the right to appeal. (*Bischel v. Fire Ins. Exchange, supra*, 1 Cal.App.4th at p. 1172; *Estate of Hart, supra*, 204 Cal.App.2d at p. 637.)

Two Court of Appeal decisions demonstrate the clarity required. In *Reisman v. Shahverdian, supra*, 153 Cal.App.3d at page 1082, the plaintiff was an attorney who had provided legal services to the defendants. The plaintiff sought to recover his fees. The defendants elected under Business and Professions Code section 6200 et seq. to arbitrate the attorney fee dispute with the Los Angeles County Bar Association. (153 Cal.App.3d at p. 1082.) The defendants agreed " 'to enter into binding arbitration' " and that, " 'No appeal or further proceedings will be possible after the arbitration award is made.' " (*Ibid.*, italics omitted.) The arbitrator awarded attorney fees to the plaintiff, a judgment was entered on the award, and the defendants appealed. Division Seven of the Court of Appeal for this appellate district observed that absent a binding arbitration agreement, the defendants had a statutory right to a trial de novo. (*Id.* at p. 1088.) The Court of Appeal held the defendants had waived that statutory right to a trial de novo, but they had not waived their right to appeal from judicial action on the arbitration award: "We conclude that the waiver agreements here are directed against a party seeking a trial de novo and against any appeal directly from the award and within the arbitration proceeding itself as distinguished from an appeal of judicial action on the award. [¶] . . . [¶] . . . Here it seems uncertain whether parties checking the box form for binding arbitration would understand that they were waiving 'appeal' which included review of judicial action regarding an award as distinguished from the actions of the arbitrators. Without greater specificity in the waiver agreement language, we hold it was not effective to waive rights to appeal trial court judicial action which was expressly provided for by [statute]." (*Id.* at pp. 1088–1089.)

In contrast, in *Pratt v. Gursey, Schneider & Co., supra*, 80 Cal.App.4th at page 1107, the parties stipulated, " '[T]he right to appeal from the arbitrator's award or any judgment thereby entered or any order made is expressly waived.' " The appeal was from a judgment confirming an arbitration award. This court dismissed the appeal. (*Id.* at p. 1112.) We found an express waiver of the right to appeal: "The broad language utilized by the parties constitutes a waiver of the right to appeal from 'any judgment' or 'any order.' . . . [T]he right to appeal 'any judgment' or 'any order' has been expressly waived." (*Id.* at p. 1110; see *Heenan v. Sobati* (2002) 96 Cal.App.4th 995, 1003 [117 Cal.Rptr.2d 532].)

Defendant asserts the provision in question here is insufficiently clear and express to constitute a waiver of his right to appeal from the judgment

entered on the arbitration award. We agree. The present case is more like *Reisman* than *Pratt*. Here, the arbitration provision recites, "The Parties waive any right to appeal the arbitral award." At the same time, however, each party expressly "retain[ed] the right to seek judicial assistance" which included the power to enforce any decision or award of the arbitrator. Therefore, the appeal wavier does not prevent a party from filing a motion or petition to secure a judgment on the arbitration award. Moreover, the parties clearly contemplated that a petition to vacate or enforce the arbitration award would be permitted. The parties agreed the arbitration proceedings would be confidential but the confidentiality provision could not prevent the filing of a petition to vacate or enforce an award. Plaintiff sought judicial assistance to enforce the arbitration award and defendant has appealed from the judgment entered pursuant to that motion.

■ Also, the parties expressly agreed that California law would be controlling. California law explicitly provides a judgment entered upon an arbitration award is appealable. (§ 1294, subd. (d);[2] *Cummings v. Future Nissan* (2005) 128 Cal.App.4th 321, 326–327 [27 Cal.Rptr.3d 10].) Further, the choice of law provision expressly states that only one part of the California Arbitration Act, section 1283.1,[3] is excluded from the provisions of the May 19, 2003 settlement agreement. Section 1283.1 involves the incorporation of the discovery provisions of section 1283.05[4] into an arbitration

---

[2] Section 1294 states: "An aggrieved party may appeal from: [¶] . . . [¶] (d) A judgment entered pursuant to this title."

[3] Section 1283.1 states: "(a) All of the provisions of Section 1283.05 shall be conclusively deemed to be incorporated into, made a part of, and shall be applicable to, every agreement to arbitrate any dispute, controversy, or issue arising out of or resulting from any injury to, or death of, a person caused by the wrongful act or neglect of another. [¶] (b) Only if the parties by their agreement so provide, may the provisions of Section 1283.05 be incorporated into, made a part of, or made applicable to, any other arbitration agreement."

[4] Section 1283.05 states: "To the extent provided in Section 1283.1 depositions may be taken and discovery obtained in arbitration proceedings as follows: [¶] (a) After the appointment of the arbitrator or arbitrators, the parties to the arbitration shall have the right to take depositions and to obtain discovery regarding the subject matter of the arbitration, and, to that end, to use and exercise all of the same rights, remedies, and procedures, and be subject to all of the same duties, liabilities, and obligations in the arbitration with respect to the subject matter thereof, as provided in Chapter 2 (commencing with Section 1985) of Title 3 of Part 4, and in Title 4 (commencing with Section 2016.010) of Part 4, as if the subject matter of the arbitration were pending before a superior court of this state in a civil action other than a limited civil case, subject to the limitations as to depositions set forth in subdivision (e) of this section. [¶] (b) The arbitrator or arbitrators themselves shall have power, in addition to the power of determining the merits of the arbitration, to enforce the rights, remedies, procedures, duties, liabilities, and obligations of discovery by the imposition of the same terms, conditions, consequences, liabilities, sanctions, and penalties as can be or may be imposed in like circumstances in a civil action by a superior court of this state under the provisions of this code, except the power to order the arrest or imprisonment of a person. [¶] (c) The arbitrator or arbitrators may consider, determine, and make such orders imposing such terms, conditions,

agreement. The May 19, 2003 settlement agreement makes no such explicit exclusionary reference to section 1294, subdivision (d) which expressly permits an appeal to proceed under these circumstances. Absent greater specificity, the arbitration clause cannot be construed to waive an appeal from a judgment entered on an award. (*Reisman v. Shahverdian, supra*, 153 Cal.App.3d at pp. 1088–1089; compare *Pratt v. Gursey, Schneider & Co., supra*, 80 Cal.App.4th at pp. 1108–1111.)

### C. Disclosure and Disqualification

#### 1. The duty to disclose

The parties agree that the disclosure and vacatur provisions of the California Arbitration Act apply to this case. Under California law, the general duty to disclose by an arbitrator is set forth in section 1281.9 subdivision (a), "In any arbitration pursuant to an arbitration agreement, when a person is to serve as a neutral arbitrator, the proposed neutral arbitrator shall disclose all matters that could cause a person aware of the facts to reasonably entertain a doubt that the proposed neutral arbitrator would be able to be impartial . . . ." (See *Jevne v. Superior Court* (2005) 35 Cal.4th 935, 945 [28 Cal.Rptr.3d 685, 111 P.3d 954]; *McManus v. CIBC World Markets Corp.* (2003) 109 Cal.App.4th 76, 96–97 & fn. 7 [134 Cal.Rptr.2d 446].) This general duty to disclose more specifically includes the following: "(1) The existence of any ground specified in Section 170.1 for disqualification of a judge. . . . [¶] (2) Any matters required to be disclosed by the ethics standards for neutral arbitrators adopted by the Judicial Council pursuant to this chapter. [¶] . . . [¶] (6) Any professional or significant personal relationship the proposed neutral arbitrator . . . has or has had with any party to the

---

consequences, liabilities, sanctions, and penalties, whenever necessary or appropriate at any time or stage in the course of the arbitration, and such orders shall be as conclusive, final, and enforceable as an arbitration award on the merits, if the making of any such order that is equivalent to an award or correction of an award is subject to the same conditions, if any, as are applicable to the making of an award or correction of an award. [¶] (d) For the purpose of enforcing the duty to make discovery, to produce evidence or information, including books and records, and to produce persons to testify at a deposition or at a hearing, and to impose terms, conditions, consequences, liabilities, sanctions, and penalties upon a party for violation of any such duty, such party shall be deemed to include every affiliate of such party as defined in this section. For such purpose: [¶] (1) The personnel of every such affiliate shall be deemed to be the officers, directors, managing agents, agents, and employees of such party to the same degree as each of them, respectively, bears such status to such affiliate; and [¶] (2) The files, books, and records of every such affiliate shall be deemed to be in the possession and control of, and capable of production by, such party. As used in this section, 'affiliate' of the party to the arbitration means and includes any party or person for whose immediate benefit the action or proceeding is prosecuted or defended, or an officer, director, superintendent, member, agent, employee, or managing agent of such party or person. [¶] (e) Depositions for discovery shall not be taken unless leave to do so is first granted by the arbitrator or arbitrators."

arbitration proceeding or lawyer for a party." (§ 1281.9, subd. (a); see *McManus v. CIBC World Markets Corp., supra,* 109 Cal.App.4th at pp. 96–97 & fn. 7.) Under section 170.1, subdivision (a): "A judge shall be disqualified if any one or more of the following is true: [¶] . . . [¶] (6)(A) For any reason: [¶] (i) The judge believes his or her recusal would further the interests of justice. [¶] (ii) The judge believes there is a substantial doubt as to his or her capacity to be impartial. [¶] (iii) A person aware of the facts might reasonably entertain a doubt that the judge would be able to be impartial."

■ Pursuant to section 1281.85, subdivision (a), the Judicial Council adopted Ethics Standards for Neutral Arbitrators in Contractual Arbitration (Standards) effective July 1, 2002. (23 pt. 4 West's Ann. Court Rules (2005 ed.) appen., div. VI, pp. 566–588, as amended eff. Jan. 1, 2003.) Standard 7 provides that written disclosure must be made by the arbitrator to the parties within 10 calendar days of notice of his or her assignment: "(d) A person who is nominated or appointed as an arbitrator must disclose all matters that could cause a person aware of the facts to reasonably entertain a doubt that the proposed arbitrator would be able to be impartial, including all of the following: [¶] . . . [¶] (5) (*Compensated service as other dispute resolution neutral*) The arbitrator is serving or has served as a dispute resolution neutral other than an arbitrator in another pending or prior noncollective bargaining case involving a party or lawyer for a party and the arbitrator received or expects to receive any form of compensation for serving in this capacity. [¶] . . . [¶] (8) (*Other professional relationships*) Any other professional relationship not already disclosed under paragraphs (2)–(7) that the arbitrator or a member of the arbitrator's immediate family has or has had with a party or lawyer for a party . . . ." (Std. 7(d), original italics.) The Standard 7(d) disclosure duty is an ongoing obligation. (Std. 7(f); *Ovitz v. Schulman* (2005) 133 Cal.App.4th 830, 840 [35 Cal.Rptr.3d 117].)

2. Nondisclosure as a ground to vacate the arbitration
award

■ Under section 1286.2, subdivision (a)(6), an arbitrator's failure to timely disclose a disqualification ground is a basis for vacating an arbitration award. (§ 1286.2, subd. (a)(6); see *Evans v. Centerstone Development Co.* (2005) 134 Cal.App.4th 151, 162 [35 Cal.Rptr.3d 745].) Section 1286.2 provides in part: "(a) . . . [T]he court shall vacate the award if the court determines any of the following: [¶] . . . [¶] (6) An arbitrator making the award either: (A) failed to disclose within the time required for disclosure a ground for disqualification of which the arbitrator was then aware; or (B) was subject to disqualification upon grounds specified in Section 1281.91 but failed upon receipt of timely demand to disqualify himself or herself as required by that provision." ■ In *Ovitz v. Schulman, supra,* 133

Cal.App.4th at page 845, our colleague, Associate Justice Thomas L. Willhite, Jr., explained: "On its face, the statute leaves no room for discretion. If a statutory ground for vacating the award exists, the trial court must vacate the award. [Citations.]" (Accord, *International Alliance of Theatrical Stage Employees, etc. v. Laughon* (2004) 118 Cal.App.4th 1380, 1386 [14 Cal.Rptr.3d 341].)

The threshold question in this case is whether there was a ground for disqualification that the arbitrator failed to disclose. If there was no ground for disqualification, then disclosure was not required, and nondisclosure is not a basis for vacating the arbitration award. (*Michael v. Aetna Life & Casualty Ins. Co.* (2001) 88 Cal.App.4th 925, 930, 943 [106 Cal.Rptr.2d 240].) As discussed below, we find substantial evidence supported the trial court's conclusion disclosure was not required, there was no ground for disqualification, and, therefore, nondisclosure was not a basis for vacating the award.

### 3. The Standard of review

 The Court of Appeal has held: "An arbitrator's failure to disclose information indicative of bias may constitute grounds to vacate the award . . . . [¶] Whether an award is tainted by bias because an arbitrator failed to disclose a particular relationship is a factual determination made by the court reviewing the award. (*Figi v. New Hampshire Ins. Co.* (1980) 108 Cal.App.3d 772, 776 [166 Cal.Rptr. 774].) The party claiming bias bears the burden of establishing facts supporting its position. (See *Betz v. Pankow* (1993) 16 Cal.App.4th 919, 926 [20 Cal.Rptr.2d 834].) The test is objective, i.e., whether the relationship would create an impression of bias in the mind of a reasonable person. (*Michael v. Aetna Life & Casualty Ins. Co.*[, *supra*,] 88 Cal.App.4th [at pp.] 936–937 [106 Cal.Rptr.2d 240].)" (*Reed v. Mutual Service Corp.* (2003) 106 Cal.App.4th 1359, 1370–1371 [131 Cal.Rptr.2d 524]; accord, *Evans v. Centerstone Development Co., supra,* 134 Cal.App.4th at p. 162.) Further, the Court of Appeal has held: "[T]he issue whether the arbitrators had a duty to disclose information . . . which might indicate bias, is a question of fact. Our review as to that issue is deferential. (*Betz v. Pankow*[, *supra*,] 16 Cal.App.4th 919 [20 Cal.Rptr.2d 834].)" (*Reed v. Mutual Service Corp., supra,* 106 Cal.App.4th at p. 1365; accord, *Fininen v. Barlow* (2006) 142 Cal.App.4th 185, 189–190 [47 Cal.Rptr.3d 687]; *Michael v. Aetna Life & Casualty Co., supra,* 88 Cal.App.4th at p. 933.)

### 4. Application to the present case

#### a. overview

Defendant asserts the trial court should have vacated the award on three grounds. Defendant contends the award should have been vacated because of

the failure to disclose as required by Standard 7(d): the arbitrator served as a dispute resolution neutral and he expects to receive "any form of compensation" from that service (Std. 7(d)(5); 23 pt. 4 West's Ann. Court Rules, *supra*, appen., div. VI, com. to Std. 7, p. 577; see § 1281.9, subd. (a)(2)); the arbitrator had a professional relationship with Mr. Kaufman, plaintiff's counsel (§ 1281.9, subd. (a)(6)); and a person aware of the facts might reasonably entertain a doubt that the arbitrator would be impartial (§§ 170.1, subd. (a)(6)(A)(iii), 1281.9, subd. (a); Std. 7(d)). We examine each of these contentions separately.

### b. prior service as a mediator in a matter involving plaintiff's attorney

■ As noted above, Standard 7(d)(5) requires an arbitrator to disclose that he or she served as "a dispute resolution neutral other than an arbitrator" in a matter involving a lawyer for a party "*and* the arbitrator received or expects to receive any form of compensation" for that service. (Italics added.) Here, the arbitrator previously had served as a volunteer mediator in a matter in which Mr. Kaufman represented a party. However, the undisputed evidence is that the arbitrator did not secure and did not expect to receive any form of compensation for serving as a mediator volunteer in the prior matter. Therefore, the Standard 7(d)(5) disqualification ground is inapplicable.

### c. professional relationship

■ Section 1281.9, subdivision (a)(6) requires that a proposed neutral arbitrator disclose, "Any professional . . . relationship [he or she] . . . has or has had with . . . [a] lawyer for a party." Defendant cites to no definition of a "professional relationship," nor any authority for the proposition that the circumstances of this case constitute a "professional relationship." Nonetheless, the evidence only demonstrates the arbitrator once served as a mediator without compensation in a matter where Mr. Kaufman represented a party unrelated to the present dispute. Under these circumstances, acting as an uncompensated mediator in a single matter does not constitute a "professional relationship" between the arbitrator and Mr. Kaufman within the meaning of section 1281.9, subdivision (a)(6). ■ As the Court of Appeal held in *Ceriale v. AMCO Ins. Co.* (1996) 48 Cal.App.4th 500, 505 [55 Cal.Rptr.2d 685], "Arbitration awards need not be vacated in every case in which there has been some contact between the arbitrator and counsel, particularly when the contact is slight or attenuated. The *Commonwealth* case recognized that arbitrators cannot sever all their ties with the business world. (*Commonwealth Corp. v. Casualty Co.* [(1968)] 393 U.S. [145,] 148–149 [21 L.Ed.2d 301, 89 S.Ct. 337]; also see *Aetna Life Insurance Co. v. Lavoie* (1986) 475 U.S. 813, 825, fn. 3 [89 L.Ed.2d 823, 106 S.Ct. 1580]; and see generally, *Park*

*Plaza, Ltd. v. Pietz* (1987) 193 Cal.App.3d 1414 [239 Cal.Rptr. 51], disapproved on other grounds in *Moncharsh v. Heily & Blase* [(1992)] 3 Cal.4th [1,] 27–28 [10 Cal.Rptr.2d 183, 832 P.2d 899]; *Betz v. Pankow* [(1995)] 31 Cal.App.4th [1503,] 1511–1512 [38 Cal.Rptr.2d 107]; *Banwait v. Hernandez* (1988) 205 Cal.App.3d 823 [252 Cal.Rptr. 647]; *San Luis Obispo Bay Properties, Inc. v. Pacific Gas & Elec. Co.* (1972) 28 Cal.App.3d 556, 567–570 [104 Cal.Rptr. 733]; *Gonzales v. Interinsurance Exchange* (1978) 84 Cal.App.3d 58 [148 Cal.Rptr. 282] [friendly acquaintance between arbitrator and senior partner of a party's law firm insufficient to show bias].)" *Figi v. New Hampshire Ins. Co., supra,* 108 Cal.App.3d at pages 775–776 is to the same effect: "In general, significant or substantial business relationships between the neutral arbitrator and a party or his representative must be disclosed to the other party, to avoid the appearance of impropriety, but ordinary and insubstantial business dealings do not necessarily require disclosure. (*Commonwealth Corp. v. Casualty Co.*[, *supra*,] 393 U.S. 145; *Wheeler v. St. Joseph Hospital* (1976) 63 Cal.App.3d 345, 369 [133 Cal.Rptr. 775] et seq.; *Gonzales v. Interinsurance Exchange*[, *supra*,] 84 Cal.App.3d [at p.] 64; *San Luis Obispo Bay Properties, Inc. v. Pacific Gas & Elec. Co.*[, *supra*,] 28 Cal.App.3d [at pp.] 567–568; *Johnston v. Security Ins. Co.* (1970) 6 Cal.App.3d 839, 842–843 [86 Cal.Rptr. 133].) Whether a particular relationship requires disclosure is a factual question to be determined by the trier of fact in each case (*San Luis Obispo Bay Properties, Inc.* [*v. Pacific Gas & Elec. Co.*], *supra,* 28 Cal.App.3d [at p.] 568). Because arbitrators are selected for their familiarity with the type of business dispute involved, they are not expected to be entirely without business contacts in the particular field, but they should disclose any repeated or significant contacts which they may have with a party to the dispute, his attorney or his chosen arbitrator." The foregoing opinions, although not directly controlling, provide a logical basis for interpreting the "professional relationship" language in section 1281.9, subdivision (a)(6). We do not imply the foregoing opinions define the entirety of the "professional relationship" standard, but they provide some helpful analysis. Substantial evidence supported the trial court's finding that no "professional relationship" existed between Mr. Kaufman and the arbitrator because of the single prior uncompensated mediation within the terms of section 1281.9, subdivision (a)(6).

### d. doubt as to impartiality

A proposed neutral arbitrator must disclose "[t]he existence of any ground specified in Section 170.1 for disqualification of a judge" (§ 1281.9, subd. (a)(1)), including when, "[f]or any reason," "[a] person aware of the facts might reasonably entertain a doubt that the [arbitrator] would be able to be impartial." (§ 170.1, subd. (a)(6)(A)(iii).) In *Michael v. Aetna Life & Casualty Ins. Co., supra,* 88 Cal.App.4th at page 936, our colleagues in Division Three of this appellate district explained that section 1281.9,

subdivision (a)(1) with its reference to section 170.1, subdivision (a)(6)(A)(iii) essentially incorporates the United States Supreme Court analysis concerning arbitrator disqualification in *Commonwealth Corp. v. Casualty Co., supra,* 393 U.S. at pages 148–149. In *Commonwealth,* a decision construing a portion of the United States Arbitration Act, the Supreme Court held: "It is true that arbitrators cannot sever all their ties with the business world, since they are not expected to get all their income from their work deciding cases, but we should, if anything, be even more scrupulous to safeguard the impartiality of arbitrators than judges, since the former have completely free rein to decide the law as well as the facts and are not subject to appellate review. We can perceive no way in which the effectiveness of the arbitration process will be hampered by the simple requirement that arbitrators disclose to the parties any dealings that might create an impression of possible bias." (393 U.S. at pp. 148–149; see *Betz v. Pankow, supra,* 16 Cal.App.4th at pp. 924–925.) Later, in *Commonwealth,* the United States Supreme Court concluded: "This rule of arbitration and this canon of judicial ethics rest on the premise that any tribunal permitted by law to try cases and controversies not only must be unbiased but also must avoid even the appearance of bias. We cannot believe that it was the purpose of Congress to authorize litigants to submit their cases and controversies to arbitration boards that might reasonably be thought biased against one litigant and favorable to another." (*Commonwealth Corp. v. Casualty Co., supra,* 393 U.S. at p. 150; see *Banwait v. Hernandez, supra,* 205 Cal.App.3d at p. 827.) Our Division Three colleagues in *Michael v. Aetna Life & Casualty Ins. Co., supra,* 88 Cal.App.4th at page 936 concluded the foregoing United States Supreme Court analysis is identical to the substance of the California Arbitration Act disqualification requirement set forth in section 1281.9, subdivision (a)(1) which incorporates section 170.1, subdivision (a)(6)(A)(iii). The test for partiality is an objective one. (*Michael v. Aetna Life & Casualty Inc. Co., supra,* 88 Cal.App.4th at pp. 936–937; *Roitz v. Coldwell Banker Residential Brokerage Co.* (1998) 62 Cal.App.4th 716, 723 [73 Cal.Rptr.2d 85].) Actual bias is not required: "Where a reasonable person would entertain doubt whether the . . . arbitrator was impartial, the appellate courts are not required to speculate whether bias was actual or merely apparent, or whether impartial consideration of the evidence and dispassionate decision of the matter would have led to the same result. (*Roitz v. Coldwell Banker Residential Brokerage Co.*[, *supra,*] 62 Cal.App.4th [at p.] 723.)" (*Michael v. Aetna Life & Casualty Ins. Co., supra,* 88 Cal.App.4th at p. 937.)

There are no facts that would cause a reasonable person to entertain a doubt whether the arbitrator was impartial. The arbitrator had served as an unpaid volunteer mediator in a matter in which plaintiff's attorney, Mr. Kaufman, had represented a party. The arbitrator had no independent recollection of the mediation which was part of a superior court program. The mediation had

taken place one year before the present arbitration. The prior contact between the arbitrator and Mr. Kaufman was limited to this one instance. There was no ongoing relationship between the arbitrator and Mr. Kaufman of any kind.

Defendant argues: "As a matter of law, a reasonable person *might* have *a doubt* regarding the arbitrator's ability to be impartial here. [Plaintiff's] lawyer, [Mr.] Kaufman, was a witness at the arbitration; moreover, there was at least one instance where [Mr.] Kaufman attempted to testify even though he was not a witness. [Mr.] Kaufman told the arbitrator that he was credible and that the arbitrator should know this in view of the prior mediation. A reasonable person aware of these facts would have a basis to doubt the arbitrator's ability to be impartial." We reject defendant's assertions for several reasons. First, the disqualification determination rests on the nature of contacts between the arbitrator and other parties or attorneys prior to and independent of the arbitration proceedings. (See §§ 1281.9, subd. (a), 170.1; Std. 7(d).) Second, Mr. Kaufman was not a witness "at the arbitration" as argued by defendant. Mr. Kaufman did testify but only in connection with a motion to disqualify him. That motion sought to disqualify Mr. Kaufman from representing plaintiff. There is no evidence Mr. Kaufman's testimony related to the merits of the dispute concerning the May 19, 2003 settlement agreement. No transcript nor any suitably comprehensively detailed declaration has been provided of Mr. Kaufman's testimony. The trial court could have reasonably concluded there was no specific evidence Mr. Kaufman's testimony related to the merits of the arbitrated dispute. Third, the arbitrator never resolved the credibility question in Mr. Kaufman's favor. In his June 6, 2005 letter to counsel, the arbitrator related, "Ultimately, in denying [defendant's] motion for disqualification of counsel . . . I did not weigh the relative credibility of Mr. Kaufman and [defendant] with respect to the alleged unauthorized settlement discussions between Mr. Kaufman and [defendant]. I indicated that this was a matter for the State Bar."

It is noteworthy that the prior mediation was disclosed to defendant's then counsel on August 12, 2004, albeit orally rather than in writing. Defendant's counsel, with knowledge of the prior mediation, did not object to the arbitrator serving as such in this matter. It was not until 10 months later, on June 3, 2005, that defendant sought to disqualify the arbitrator. (See *Fininen v. Barlow, supra*, 142 Cal.App.4th at pp. 190–191.) However, because we conclude there was no ground for disqualification that the arbitrator was required to disclose, we need not address defendant's additional contentions—that "the alleged oral disclosure did not comply with the statutory requirements and the trial court erred in concluding that such a failure was not a ground to vacate the award"; and "vacatur of the arbitration award here will further the public policy favoring ethical practices by arbitrators." (Capitalization omitted.)

## IV. DISPOSITION

The judgment is affirmed. Plaintiff, Gary Guseinov, is to recover his costs on appeal from defendant, Stan Burns.

Armstrong, J., and Mosk, J., concurred.