Filed 11/27/24; certified for publication 12/17/24 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| NATALIE LLOYD MERRICK,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>GEE LAU,<br><br>Defendant and Respondent. | B322994<br><br>Los Angeles County<br>Super. Ct. No. BC658090 |

APPEAL from a postjudgment order of the Superior Court of Los Angeles County.  Randolph M. Hammock, Judge. Affirmed.

Buchalter, Daniel Harrison Wu and Robert Collings Little for Plaintiff and Appellant.

No appearance for Defendant and Respondent.

————————————————

## SUMMARY

This case arises from a monetary dispute between mother and daughter. The daughter sued her mother and obtained a money judgment. During enforcement proceedings, the mother eventually tendered the judgment amount, prejudgment interest, and $4,239 in interest accrued on a bank account in Shanghai in which the monies had been held. The present dispute concerns whether the mother (defendant) fully satisfied the judgment.

The trial court found defendant had tendered the full amount owed and granted her motion to require plaintiff to acknowledge full satisfaction of the judgment. Plaintiff appeals, contending there was no competent evidence to substantiate the amount of interest that had accrued on the Shanghai bank account. Plaintiff also contends the court abused its discretion in failing to enforce an order for a judgment debtor's examination of defendant. Plaintiff complains about a comment by the trial court that included a gratuitous reference to plaintiff's ethnicity and gender, which plaintiff says offended due process.

We find no merit in any of plaintiff's contentions and affirm the trial court's order.

## FACTS

Plaintiff Natalie Lloyd Merrick is the daughter of defendant Gee Lau. She lent her mother funds to purchase a condominium in Shanghai so that her mother could live there. After disputes over defendant's use of the property, the two made an agreement about funds to be paid to plaintiff when the property was sold.

In March 2016, Teddy Lloyd (defendant's son and plaintiff's brother) sold the Shanghai condominium on defendant's behalf and placed the proceeds in his own personal bank account in China. In April 2017, plaintiff sued Mr. Lloyd and defendant to

2

recover her interest in the balance from the sale of the property "in the amount of at least $306,089.53."

In June 2019, the court found defendant breached her agreement with plaintiff. (The court found Mr. Lloyd was not liable for conversion and there was no judgment against Mr. Lloyd.)

The July 22, 2019 judgment provided plaintiff was to recover from defendant "the net proceeds from the sale of the Property in the amount of $242,091.00 plus any interest accrued on the Agricultural Bank of China bank account in which the monies were held" as well as prejudgment interest from March 16, 2016.

Over two years later, on October 14, 2021, plaintiff filed an application and order for defendant to appear for a judgment debtor's examination on November 4, 2021.[1] A week or so later, the case was reassigned from Judge Stuart M. Rice to Judge Randolph M. Hammock.

Judge Hammock's November 4, 2021 minute order states that defendant did not appear. The minute order also states that defendant's "motion to stay enforcement of judgment is currently scheduled for 11/24/2021," and on its own motion, the court continued the debtor examination hearing to the same date.

The November 24, 2021 hearing concerned both defendant's judgment debtor examination and a "Motion to Expunge

---

[1]     The court is required to make the order "upon ex parte application of the judgment creditor" if the judgment creditor has not caused the judgment debtor to be examined during the preceding 120 days. (Code Civ. Proc., § 708.110, subd. (b).)

3

Mechanics' Lien."[2]  Counsel for both parties were present.  The court, on its own motion, continued the motion to expunge ("to inquire if Judge Rice is available to hear the motion") to December 17, 2021.  The minute order states there was no appearance by defendant, but "[n]otice that a bench warrant will be issued if [defendant] fails to appear is not proper."  At plaintiff's request, the debtor examination hearing was also continued to December 17, 2021.

Defendant was not present at the December 17, 2021 hearing.  Both counsel were present.  The court, on its own motion, continued the hearing to January 20, 2022, and ordered plaintiff "to provide the defendant with a payoff amount by the end of the year," including a breakdown on how the amounts were calculated.  Further, the order stated that if defendant "does not appear at the next hearing, this Court may issue a bench warrant."

At the January 20, 2022 hearing, both counsel appeared and so did Teddy Lloyd.  Mr. Lloyd turned over two cashier's checks and a personal check in the amounts of $308,494.91 (the judgment amount plus costs and interest to December 31, 2021), $81,117.06 (prejudgment interest), and $2,354 (interest on the bank account in China) to counsel for plaintiff.  On the court's own motion, the hearing was continued to April 22, 2022.  The minute order states the court "continues to maintain jurisdiction over [defendant]," who was "ordered to appear in person or remotely at the next hearing, unless this issue is resolved in its entirety."

---

[2]     Service of an order for a debtor examination "creates a lien on the personal property of the judgment debtor . . . ."  (Code Civ. Proc., § 708.110, subd. (d).)

4

The following day, defense counsel sent plaintiff's counsel two additional checks, one for the daily interest from January 1 to January 21, 2022, and the other for what he said was "the balance" of the interest on the bank account in China ($1,885), and asked plaintiff's counsel to agree to file a full satisfaction of judgment. Plaintiff's counsel responded with another request for "documentary proof showing the amount of interest paid" on the bank account.

Two months later, on March 25, 2022, defendant filed a motion to require plaintiff to file an acknowledgement of full satisfaction of the judgment, along with declarations from defense counsel and Mr. Lloyd and accompanying exhibits, mostly the correspondence among counsel and Mr. Lloyd.

Mr. Lloyd declared the interest from the bank account at Agricultural Bank of China was paid in full on January 21, 2022, by the check delivered to plaintiff's counsel in the amount of $1,885. He said he had provided counsel with evidence from the bank of the interest rate on the account (in two documents not in English), and he attached the calculation defense counsel had provided to plaintiff's counsel. The calculation was: judgment amount ($242,091) x annual interest rate (0.30%) x number of years (3/16/2016 to 1/20/2022) (5.833 years) = $4,236.35. Mr. Lloyd further declared that plaintiff's counsel asked for bank statements "which I do not have and which the Agricultural Bank of China does not provide."

Plaintiff's opposition acknowledged that defendant "tendered the purported accrued interest amount of $4,239.00 from the Agricultural Bank of China bank account," but failed to provide any bank statements showing the accrued interest in order to substantiate the amount. Plaintiff argued it was "highly improbable and unlikely the bank does not provide bank statements," and even assuming the interest rate on the

5

untranslated documents Mr. Lloyd provided was 0.3 percent, there was nothing to show whether it was calculated per annum or was fixed or variable.  Plaintiff argued the court should deny the motion and order production of bank statements.  Plaintiff also contended that the checks tendered for the judgment amount and the prejudgment interest did not satisfy the judgment because they were drawn on Mr. Lloyd's accounts, not on defendant's accounts.

There was a hearing on defendant's motion on April 20, 2022.  The court explained (as it stated in its ultimate ruling) that "without conclusive evidence that all interest has been paid," the court could not conclude the judgment had been satisfied.  The court instructed the parties to file supplemental papers addressing the issue of the accrued interest in the Chinese bank accounts, and continued the hearing to June 3, 2022.

Defendant filed a supplemental declaration from Mr. Lloyd, with copies of two documents from the Agricultural Bank of China.  The trial court described them in its ruling:  "The documents are written mostly in Chinese, but contain some annotated English translations by Defendant Lloyd, who purports to be fluent in English and Chinese."  Mr. Lloyd attested that one exhibit is a receipt dated December 20, 2016, and "relates to my initial deposit of the net funds from the sale" of the property into the bank account and lists an annual interest rate of 0.300 percent.  The other exhibit is dated April 12, 2019, and, according to Mr. Lloyd, reflects that he is the account holder and the annual interest rate is 0.300 percent.

Plaintiff's response contended Mr. Lloyd's declaration did not provide competent evidence of accrued interest; Mr. Lloyd is not a certified court interpreter, so his declaration should be disregarded in its entirety; there was nothing to show whether the interest rate is per annum or fixed or variable; the documents

6

contain different account numbers, and the discrepancy "underscores the need for the bank statements in order to ascertain the amount of accrued interest owed to [plaintiff]." Plaintiff's response also included her declaration describing why she would not accept Mr. Lloyd's cashier's checks as payment for the underlying judgment, including assertions that his and defendant's actions "may constitute tax evasion, embezzlement, money laundering, and bank fraud," and other similar derogatory comments.

At the hearing on June 3, 2022, the court took the debtor examination hearing off calendar; continued to June 23, 2022 the hearing on defendant's motion to require plaintiff to acknowledge full satisfaction of the judgment; and ordered counsel for plaintiff "to negotiate the received checks forthwith."

The court issued its final ruling after the hearing on June 23, 2022, granting defendant's motion. The court described the supplemental papers and stated that, despite the shortcomings plaintiff identified, based "upon the totality of the circumstances and evidence," defendant met her burden of proof "that she has, in fact, tendered [the] full amount of the outstanding judgment."

The court observed that plaintiff "has not challenged the fact that assuming the interest rate was 0.300 percent, simple interest, annual, that the amount tendered was insufficient. It seems illogical to this Court, and moreover, unlikely, that the Defendant is attempting to 'shortchange' the Plaintiff on any additional interest that may have been paid, given the totality of the circumstances."

At the hearing, the court stated that plaintiff made some "fair points that caused me to think about it and consider it," but "I'm satisfied by a preponderance of the evidence that they've given you all the interest that was incurred in that account. . . .

7

[¶] . . . I agree there could have been better evidence. But it's only required to be a preponderance and it's there. It preponderates. They have tendered the full amount owed . . . ."

The court also addressed plaintiff's complaints that the checks did not come directly from defendant as "frankly, absurd," observing there was no evidence the cashier checks were from "ill-begotten funds," and "[w]hether they came from [defendant] or directly from President Xi Jinping of China is of no concern to this Court, or under the applicable law."

The court concluded: "The cashier's checks are legal tender and must be accepted as full satisfaction of judgment. Once again, it is clear to this Court that the refusal of the Plaintiff to simply accept these funds is based in bad faith, and part of a personal vendetta between the parties." The court ordered plaintiff "to file a Full Satisfaction of Judgment within 10 days," and stated if plaintiff did not do so, the court would direct the clerk to do it. The court also awarded defendant $2,083 in mandatory attorney fees. (Code Civ. Proc., § 724.080.)

Plaintiff did not comply with the court's order and on July 14, 2022, the court ordered the court clerk to enter satisfaction of judgment (Code Civ. Proc., § 724.050, subd. (d)).

Plaintiff filed a timely appeal from the June 23, 2022 order.

## DISCUSSION

Plaintiff's first contention is that no competent evidence supports the trial court's ruling that all the bank interest awarded to her in the judgment was paid, so the ruling was "erroneous as a matter of law." Plaintiff challenges the bank documents Mr. Lloyd presented as inadmissible because the documents were hearsay, were without foundation, were not authenticated by a custodian of records and were not translated by a certified translator.

8

The question, however, is whether there was sufficient evidence to conclude the interest was fully paid, and there was: Mr. Lloyd's declarations attested that the annual interest rate "is and has always been 0.300 percent," that all the interest from the account was paid in full, and that the bank does not provide bank statements. The trial court acknowledged that "there could have been better evidence." But the court was entitled to consider Mr. Lloyd's declarations and properly considered the totality of the circumstances, including that it was illogical and unlikely that defendant was trying to shortchange plaintiff. We cannot find an abuse of discretion on this record.

Plaintiff next contends the court abused its discretion by taking defendant's debtor examination off calendar, thus "prejudic[ing] [plaintiff's] statutory and due process rights to uncover evidence from [defendant] showing the amount of interest to which [plaintiff] was entitled." Our review of the record of the trial court's orders, recounted in detail in the Facts section, demonstrates only reasonable orders by the court over the course of the proceedings. Moreover, plaintiff fails to explain how defendant could conceivably provide any information or documentation about interest on a personal bank account in Shanghai that belonged to Mr. Lloyd, not to her. In short, plaintiff has failed entirely to show the lack of a debtor's examination "result[ed] in a miscarriage of justice."

Next, plaintiff contends that comments by the court at the final hearing, describing plaintiff as "this little Chinese woman," showed judicial bias based on ethnicity and gender, and "undermines abiding confidence in the fairness of the proceeding,

9

offends due process, and is structural error meriting reversal."[3] We disagree with plaintiff's conclusions.

Unnecessary references to a litigant's ethnicity and gender are certainly to be avoided. Here, however, we find no reason to believe the judge harbored any bias against plaintiff (who shares the ethnicity and gender of defendant). We have reviewed the record and find it devoid of any other reference to plaintiff's ethnicity or gender, or any other evidence of bias against her, and plaintiff identifies none. Accordingly, there is no basis for finding any due process violation or any unfairness in the proceedings. (Cf. *People v. Freeman* (2010) 47 Cal.4th 993, 996 [the mere appearance of bias is not sufficient for judicial disqualification under the due process clause; only "extreme facts" require judicial disqualification on due process grounds].) However, this court respects the scholarly analysis contained in the concurring opinion of Presiding Justice Stratton.

---

[3] Following is the full comment to which plaintiff objects. The court's remarks were part of a discussion with plaintiff's counsel about why plaintiff would not accept the checks defendant tendered to her in payment of the judgment.

"THE COURT: I already rejected those arguments. Okay. I know your client was not happy with my ruling. [This apparently refers to a tentative ruling at the previous hearing.] I mean, she was there, you know, mad dogging me, which didn't bother me at all. It was almost amusing to see this little Chinese woman stare me down, because she didn't like the ruling. But, again, it's just business. I didn't take it personally. I'm truly at a loss. I really truly am at a loss. I'll tell you what, why don't you go ahead and say what you need to say and then I'll make a ruling."

10

Finally, plaintiff claims there was "yet another structural error" because the court apparently proposed in its *tentative* ruling to resolve the matter by having plaintiff acknowledge full satisfaction of the judgment and defendant give up her right to mandatory attorney fees ($2,083), with both parties agreeing not to appeal the ruling. Plaintiff likens this to the trial court coercing a waiver of appeal rights, as in *Wuest v. Wuest* (1942) 53 Cal.App.2d 339, 345 ("In making the waiver of appeal by plaintiff from any portion of the judgment the price of obtaining a judgment to which she was entitled, the trial judge materially prejudiced a substantial right belonging to plaintiff."). Here, the proposal in the trial court's tentative ruling did not coerce either party to do anything. And in any event, the final ruling is the only ruling that matters and there is no error in that ruling.

## DISPOSITION

The order is affirmed. No costs are awarded.

GRIMES, J.

WE CONCUR:

STRATTON, P. J.

VIRAMONTES, J.

11

**STRATTON, P. J. and VIRAMONTES, J., Concurring.**

"I already rejected those arguments.  Okay.  I know your client was not happy with my ruling.  I mean, she was there, you know, mad dogging me, which didn't bother me at all.  It was almost amusing to see this little Chinese woman stare me down, because she didn't like the ruling.  But again, it's just business.  I didn't take it personally."

I concur in the majority opinion because I do not believe the trial judge's gratuitous comments influenced his ruling.  The trial judge made findings that were fully supported by the evidence.  The ultimate ruling did not improperly turn on stereotypes about Asian women, but rather on a realistic evaluation of the facts.  (*Catchpole v. Brannon* (1995) 36 Cal.App.4th 237, 259 [reversal required where ruling is influenced by gender stereotypes rather than a realistic evaluation of the facts], disapproved on another ground by *People v. Freeman* (2010) 47 Cal.4th 993, 1006, fn. 4; *In re Marriage of Iverson* (1992) 11 Cal.App.4th 1495, 1501 [judge employed gender-based stereotypes in decisionmaking process], disapproved on another ground by *Freeman*, at p. 1006, fn. 4.)  Nor were the comments so pervasive as to destroy the appearance of justice.  (*Iverson*, at p. 1501.)

However, although the trial judge's decision does not appear to have been based on or influenced by the attitudes he expressed, his comments cannot pass without censure.  In her brief, appellant characterizes these comments as a "withering diminishment of [her] dignity as a person."  She could not be more correct.

Demeaning any litigant, as the court did here, is categorically unacceptable.  Canon 3(B)(4) of the California Code of Judicial Ethics states:  "A judge shall be patient, dignified, and

courteous to litigants, jurors, witnesses, lawyers, and others with whom the judge deals in an official capacity."  Canon 1 of the California Code of Judicial Ethics requires a judge to act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.  "An independent, impartial, and honorable judiciary is indispensable to justice in our society.  A judge should participate in establishing, maintaining, and enforcing high standards of conduct, and shall personally observe those standards so that the integrity and independence of the judiciary is preserved."  (Cal. Code of Jud. Ethics, canon 1.)

But beyond being generally demeaning, the trial judge's patronizing description of Merrick violated both of these canons.  He was neither dignified nor respectful of this litigant, and his comment degraded the integrity of the judicial branch and diminished confidence in the court.

But beyond being generally demeaning, the trial judge's fatuous comment traded on racist and sexist tropes.  Nothing about Merrick's gender or race was remotely relevant to the matters before the court, but the trial court inexplicably interjected them into the hearing.  The trial judge found it funny ("almost amusing") that Merrick, a "little Chinese woman," stared him down.  The judge was clear: he wasn't amused simply because some litigant gave him a dirty look.  He was amused because "a little Chinese woman" gave him a dirty look.  Implicit in the court's identification of these characteristics as what made Merrick's conduct funny was the concept that her behavior was incongruous; that is, someone like Merrick was neither expected nor supposed to act in a certain manner.  This is pure stereotyping.

How should a "little Chinese woman" have acted?  Like the stereotype of an Asian woman—demure, meek, eager to please, deferential to men?  (Mukkamala & Suyemoto, From Exotic to Invisible Asian American Women's Experiences of Discrimination (July 26, 2018) <https://www.apa.org/pubs/highlights/ spotlight/issue-119> [as of Nov. 25, 2024], archived at <https://perma.cc/32ZA-5URT> [Asian American woman often stereotyped as exotic, submissive, cute and small, invisible].)  The trial judge mocked Merrick for daring to show her displeasure at his ruling.  Would he have found it funny if a person of another gender, race, or physical stature had done the same thing?  And would he have commented on their gender, ethnicity, and physical stature if they had done so?  I think not.

It would not have been necessary to mention Merrick's particular characteristics if the humor the court perceived was not based on her gender, ethnicity, and diminutive stature.  The trial judge's identity-focused comment violated canon 3(B)(5) of the California Canon of Judicial Ethics: "A judge shall not, in the performance of judicial duties, engage in speech, gestures, or other conduct that would reasonably be perceived as . . . bias, prejudice, or harassment, including but not limited to bias, prejudice, or harassment based upon race, sex, gender, gender identity, gender expression, religion, national origin, ethnicity, disability, age, sexual orientation, marital status, socioeconomic status, or political affiliation."  (Cal. Code of Jud. Ethics, canon 3(B)(5).)

I accept that the trial judge's remarks may have been unwitting, but that is no excuse.  Unwitting remarks like these indicate implicit bias, a subject about which we judges have been extensively educated.  "[I]ndividuals develop implicit attitudes

and stereotypes as a routine process of sorting and categorizing the vast amounts of sensory information they encounter on an ongoing basis.  Implicit, as opposed to explicit, attitudes and stereotypes operated automatically, without awareness, intent or conscious control.  Because they are automatic, working behind-the-scenes, they can influence or bias decisions and behaviors, both positively and negatively, without an individual's awareness."  (Nat. Center for State Cts., Resources for Education (2021) Helping Courts Address Implicit Bias, pp. 1–2.)

Frequently, implicit bias is manifested in microaggression, " 'a comment or action that subtly and often unconsciously or unintentionally expresses a prejudiced attitude toward a member of a marginalized group such as a racial minority.' "  (Reddock-Wright & Dhanadina, *Microaggression and gaslighting in the legal profession* (Feb. 26, 2024) <https://www.dailyjournal.com/articles/377328-microaggression-and-gaslighting-in-the-legal-profession [as of November 25, 2024], archived at <https://perma.cc/A6LR-MJ89>.)  Whether consciously motivated or not, the trial judge committed a microaggression when he mocked Merrick for, in effect, not adhering to the western stereotype ascribed to Asian females.  And it is an aggravating, not mitigating, factor that the defendant was also an Asian woman.  The defendant was not glaring at the judge, so she was not bucking the trial judge's expectation of how Asian women should act—a point I am sure was not lost on Merrick when she heard the trial judge's comment.

As we are taught, being mindful of the stereotypes we all carry (and their triggers) is part of our job as judges.  Reining in impulses, our inner autopilot, to make random comments that personally denigrate a litigant is also part of our job.  To quote

4

our colleagues in the Fourth District Court of Appeal, "words are to [judges] as scalpels are to surgeons." (*People v. Ramirez* (2024) 104 Cal.App.5th 315, 320.)  No doubt Merrick reasonably questioned the trial judge's impartiality when he mocked her as a "little Chinese woman" with the temerity to glare at him.

This may have been an isolated incident that did not infect the proceedings as a whole, but that does not diminish the harm it caused.  For the person being mocked for immutable characteristics like ethnicity and gender—especially by a judicial officer who has sworn to be unbiased—comments like these inflict the stinging helplessness of injustice.  For society as a whole, conduct of this nature causes a loss of confidence in our judicial system.  "[T]he source of judicial authority lies ultimately in the faith of the people that a fair hearing may be had.  Judicial behavior inimical to that necessary perception can never be countenanced." (*Catchpole v. Brannon, supra*, 36 Cal.App.4th at p. 253.)

STRATTON, P. J.

I concur:


VIRAMONTES, J.

5

Filed 12/17/24

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| NATALIE LLOYD MERRICK, | B322994 |
| Plaintiff and Appellant, | Los Angeles County Super. Ct. No. BC658090 |
| v. | |
| GEE LAU, | **ORDER CERTIFYING OPINION FOR PUBLICATION** |
| Defendant and Respondent. | **[No Change in Judgment]** |

THE COURT:

     The opinion in the above-entitled matter filed on November 27, 2024, was not certified for publication in the Official Reports. For good cause, it now appears that the opinion should be published in the Official Reports and it is so ordered.

     There is no change in the judgment.

_____

STRATTON, P. J.     GRIMES, J.     VIRAMONTES, J.